# STATE OF CONNECTICUT *v.* CHARLES SLIMSKEY
## (AC 18727)

O'Connell, C. J., and Zarella and Dupont, Js.[1]

Argued February 14—officially released August 15, 2000

---

[1] The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Donald G. Leis, Jr.*, with whom, on the brief, was *Dennis M. McManus*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, was *Scott J. Murphy*, state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The defendant, Charles Slimskey, appeals from the judgment of conviction, rendered after a jury trial, of two counts of risk of injury to a child in violation of General Statutes (Rev. to 1993) § 53-21, one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), and one count of possession of fireworks in violation of General Statutes § 29-357. On appeal, the defendant claims that the trial court improperly (1) refused to conduct an in camera review of the complaining witness' school records, including any psychological or psychiatric records that may have been contained within such records, (2) failed to admit into evidence a prior inconsistent statement of the victim's father and (3) admitted into evidence a certain pornographic videotape. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim first met in the summer of 1993, when the victim was approximately fourteen years old and the defendant was approximately forty years old. Their relationship initially consisted of the victim's visiting the defendant at his automobile repair and restoration shop to talk about cars. The victim was interested in cars and enjoyed spending time at the defendant's shop helping out in various ways.

The relationship progressed, and the defendant invited the victim to his residence in Berlin to show the victim his model cars. While at his house, the defendant

showed the victim a sexually explicit videotape entitled, "Dirty Dozen," and encouraged the victim to masturbate. On several other occasions at the defendant's residence, the victim and the defendant engaged in mutual masturbation, and the defendant exposed the victim to sexually explicit materials, including videotapes and magazines.

The defendant also had a fetish for cutting and pulling hair. He initially involved the victim by asking to cut and color the victim's hair. It developed to the point that the defendant agreed in writing with the victim to provide him with a Mustang automobile at cost when he turned sixteen years old in exchange for the victim's allowing the defendant to have "full control" of his hair.

The sexual activity between the victim and the defendant then progressed to include oral sex. Initially, the victim was not a willing participant. He eventually agreed, however, and the two engaged in oral sex on several occasions.

In the spring of 1995, the victim ran away from home to Delaware, where he was arrested. The victim's father retrieved him from Delaware and began tape-recording the victim's telephone conversations, including several between the defendant and the victim. Several of the conversations contained details of the victim's hairstyle, and the defendant's plan to cut and lighten the victim's hair. The victim's father confronted the victim, who eventually confided in his father the details of his relationship with the defendant. The victim's father reported these details to the Berlin police department.

In April, 1995, the Berlin police obtained a warrant to search the defendant's residence. This search yielded most of the state's physical evidence, including pornographic videotapes and a logbook in which the defendant kept pieces of hair and details of haircuts that he had given.

In March, 1998, prior to the commencement of the trial, the defendant filed a motion seeking disclosure of the victim's school and psychological records. In that motion, the defendant requested that the court conduct an in camera inspection of the records to determine if they contained any information that might affect the victim's ability to be truthful. After a hearing on March 10, 1998, the court, *Scheinblum, J.*, granted the motion and reviewed the records. The court concluded that the records did not contain any information that might affect the witness' ability to testify truthfully.

The matter proceeded to trial in June, 1998. On the last day of evidence, the defendant renewed his motion for disclosure of the records and requested that the court, *Cutsumpas, J.*, make an in camera review. The motion was denied. The defendant thereafter was found guilty of two counts of risk of injury to a child and one count of sexual assault in the second degree. The defendant was sentenced to a total effective term of twenty years, execution suspended after ten years, with five years probation.

I

The defendant first claims that the court abused its discretion by refusing to conduct an in camera review of the victim's school records, including any psychological or psychiatric records that may have been contained within such records, and by denying him access to the records. We are not persuaded.

As previously stated, prior to trial, the defendant filed a motion seeking disclosure of certain of the victim's school records. In that motion, the defendant sought to have the court conduct an in camera inspection of the records to determine whether anything in them would bear on the credibility of the victim or his ability to testify truthfully.

In March, 1998, the court, *Scheinblum, J.*, granted the pretrial motion and conducted an in camera inspection. The court determined that there was nothing in the records that would bear on the ability of the victim to testify truthfully and, therefore, the defendant was denied access to and use of the records.

The victim testified at trial. At the end of the defendant's case, defense counsel moved that the court, *Cutsumpas, J.*, conduct an in camera review of the school records to determine if they contained evidence that would bear on the truthfulness of the victim's testimony. The court denied the motion on the grounds that at an earlier stage in the same proceeding, a review or inspection had been completed by another court, which had denied access to the records, and that there were no new records to review.[2]

"On appeal, this court has the responsibility of conducting its own in camera inspection of the sealed records to determine if the trial court abused its discretion in refusing to release those records to the defen-

---

[2] The court stated: "Well, counsel, from what I understand from the in-chambers conference and from a review of the court file, the clerk's file, your motion for an examination of these in camera records was vigorously pursued. I read this morning the twelve page brief, which your office had filed for that purpose. And Judge Scheinblum, from my examination of the file, apparently granted your motion for an in camera review and reviewed those records. And according to the transcript you handed to me, Judge Scheinblum said, and I quote: 'And I made an in camera inspection, and I find nothing in there that would bear upon the witness' ability to be truthful. His ability to recant the allegations and, accordingly, it will go no further.' And so your in camera review was granted, counsel.
* * *
"I am also concerned that the state would be somewhat prejudiced at this stage if I overturned Judge Scheinblum's order even if I had authority to do so on the bases that they prepared their case without the benefit of these records. . . . I suspect that the state had the same kind of concerns. So, counsel, I am going to deny your request. If you wish to put the witness on with something new, I would be happy to entertain it. If not, I am denying your request."

dant." *State* v. *Walsh*, 52 Conn. App. 708, 722, 728 A.2d 15, cert. denied, 249 Conn. 911, 733 A.2d 233 (1999).

"The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Storlazzi*, 191 Conn. 453, 459, 464 A.2d 829 (1983). "Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis." Id. At this stage in the proceedings, when the trial court has reviewed the records in camera, access to the records "must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records." (Citation omitted; internal quotation marks omitted.) Id. We review the court's decision under an abuse of discretion standard.

We have carefully examined the challenged records and conclude that the court reasonably could have found that they contained no evidence that was probative of the victim's ability to be truthful. The court did not abuse its discretion in denying the defendant's motion for disclosure of the victim's school and psychiatric records.[3]

## II

The defendant next claims that the court abused its discretion in refusing to admit into evidence a prior

---

[3] The defendant additionally claimed that the court, *Cutsumpas, J.*, abused its discretion in failing to review the records in light of the evidence introduced at trial. As noted, we have reviewed the records and determined that the defendant suffered no prejudice resulting from the court's refusal to review them again.

written statement given to the police by the victim's father. We decline to address this claim.

As the appellant, the defendant has the burden to provide an adequate record for review. *State* v. *Collic*, 55 Conn. App. 196, 209, 738 A.2d 1133 (1999). The defendant at trial did not mark the written statement for identification and, therefore, it is not part of the record. "The purpose of marking an exhibit for identification is to preserve it as part of the record and to provide an appellate court with a basis for review." (Internal quotation marks omitted.) *State* v. *Harrison*, 34 Conn. App. 473, 490, 642 A.2d 36, cert. denied, 231 Conn. 907, 648 A.2d 157 (1994). Thus, the written statement is not part of the record before us, and we are unable to review the claim.

## III

The defendant's final claim is that the court abused its discretion in admitting into evidence a challenged videotape because there was a gap in the chain of custody of the videotape.[4] Further, the defendant claims that the state failed to lay a foundation that adequately established the unaltered condition of the videotape. We do not agree.

At trial, the state presented the testimony of several police officers regarding the seizure of items from the defendant's house. Officer Drew Gallupe collected all of the seized items garnered during the search. Subsequently, the evidence was transported to the police station and turned over to the evidence custodian, Detective Raymond Gola, who also had taken part in the search of the defendant's house. The evidence never

---

[4] The defendant claims that there is a gap in that "the Berlin police never knew from the very outset precisely what they had seized—either in terms of the titles of the videotapes in their individual plastic containers or in terms of the number of videocassettes, which they caused to be seized."

left Gallupe's custody until he delivered it to the police station.

Among the items collected at the defendant's house were several videotapes. Gallupe testified on cross-examination that he did not individually view, tag and record each of the videotapes. He also acknowledged that the inventory form listed an entry for videotapes as "VHS videocassette" and another was entered as "VHS videotapes." The inventory list did not number or describe the videotapes.

Gola also testified concerning the videotapes. He was shown three videotapes and stated that "these appear to be the same tapes that were seized by me." The state represented to the court that the videotapes were secure in the property room at the Berlin police department and then transferred to a sealed box for transportation to the courthouse. The box containing the videotapes was opened in the presence of defense counsel.

At trial, the state offered one of the videotapes entitled, "Dirty Dozen," as an exhibit. The defendant objected and argued that there was a gap in the chain of custody of the videotape and, therefore, it could not be identified as one of the seized videotapes. Further, the defendant also argued that the gap in the chain of custody made it impossible to ensure that the tape was in the same condition as the one seized at his house.

The court found that there was satisfactory proof of an adequate chain of custody, that there was a reasonable probability that the evidence seized at the defendant's house was the same as that offered at trial, that the evidence had not been tampered with and that any weakness in the chain of custody went to the weight of the evidence and not its admissibility. The videotape was then admitted as a full exhibit.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there is an abuse of discretion and a showing by the defendant of substantial prejudice or injustice. . . . *State* v. *Cole*, 50 Conn. App. 312, 330–31, 718 A.2d 457, cert. granted on other grounds, 247 Conn. 937, 722 A.2d 1217 (1998). It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. . . . *Wright* v. *Hutt*, 50 Conn. App. 439, 445, 718 A.2d 969, cert. denied, 247 Conn. 939, 723 A.2d 320 (1998)." (Internal quotation marks omitted.) *State* v. *Orhan*, 52 Conn. App. 231, 237–38, 726 A.2d 629 (1999).

A

The defendant claims that the court improperly admitted the challenged videotape because there was a gap in the chain of custody of the videotape. We do not agree.

We conclude that the court did not abuse its discretion in admitting the videotape. Each police officer having custody of the admitted evidence testified at trial. This testimony laid a sufficient foundation for the admission of the videotape. The court, therefore, properly admitted the videotape.

## B

The defendant further claims that the state failed to lay a foundation that adequately established the unaltered condition of the videotape. We disagree.

"An object connected with the commission of a crime must be shown to be in substantially the same condition as when the crime was committed before it can be properly admitted into evidence. . . . The court has broad discretion on this evidentiary issue, and its ruling may not be overturned on appellate review except for a clear abuse of discretion. . . . The state's burden with respect to establishing a chain of custody is met by showing that it is reasonably probable that the substance has not been changed in important respects . . . . The court must consider the nature of the article, the circumstances surrounding its preservation and custody and the likelihood of intermeddlers tampering with it . . . . There is no hard and fast rule that the state must exclude or disprove all possibility that the article has been tampered with." (Citations omitted; internal quotation marks omitted.) *State* v. *Green*, 55 Conn. App. 706, 713, 740 A.2d 450 (1999), cert. denied, 252 Conn. 920, 744 A.2d 438, cert. denied, 529 U.S. 1136, 120 S. Ct. 2019, 146 L. Ed. 2d 966 (2000).

The defendant has not presented any evidence indicating that the videotape was tampered with in any way. The defendant's assertions to the contrary are merely speculative. See *State* v. *Burns*, 23 Conn. App. 602, 615, 583 A.2d 1296 (1990). "The defendant has the obligation of affirmatively showing that the evidence was in some way tampered with, altered, misplaced, mislabeled or otherwise mishandled to establish an abuse of the court's discretion in admitting the evidence." *State* v. *Green*, supra, 55 Conn. App. 713. The court properly admitted the videotape in this case.

The judgment is affirmed.

In this opinion the other judges concurred.