STATE OF CONNECTICUT *v.* XAVIER WRIGHT
(AC 18234)

Lavery, C. J., and Spear and Dranginis, Js.

Argued January 9—officially released May 1, 2001

*Timothy E. Welsh,* for the appellant (defendant).

*Michael L. Regan,* senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane,* state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Xavier Wright, appeals from the judgment of the trial court convicting him of two counts of sale of a narcotic substance in violation

of General Statutes § 21a-278 (b),[1] two counts of conspiracy to sell a narcotic substance in violation of General Statutes §§ 21a-278 (b) and 53a-48,[2] and one count of sale of a controlled substance within 1500 feet of a private elementary school in violation of General Statutes § 21a-278a (b).[3] On appeal, the defendant claims that (1) the court improperly permitted the state to introduce evidence that the substance that he sold to an undercover detective was cocaine when the state had destroyed the actual substance and could not prove its chain of custody, (2) his trial counsel rendered ineffective assistance,[4] (3) the court improperly refused to

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who . . . sells . . . to another person any narcotic substance . . . except as authorized in this chapter, and who is not at the time of such action a drug-dependent person . . . shall be imprisoned . . . ."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes § 21a-278a (b) provides in relevant part: "Any person who violates section . . . 21a-278 by . . . selling . . . to another person any controlled substance in or on, or within one thousand five hundred feet of, the real property comprising a . . . private elementary . . . school . . . shall be imprisoned for a term of three years, which shall not be suspended and shall be in addition and consecutive to any term of imprisonment imposed for violation of section . . . 21a-278. . . ."

[4] We decline to review the defendant's claim because "a claim of ineffective assistance of counsel is more properly pursued on a petition for [a] new trial or on a petition for a writ of habeas corpus rather than on direct appeal." (Internal quotation marks omitted.) State v. Mims, 61 Conn. App. 406, 409, 764 A.2d 222, cert. denied, 255 Conn. 944, 764 A.2d 222, cert. denied, 255 Conn. 944, 769 A.2d 60 (2001), quoting State v. Leecan, 198 Conn. 517, 541, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986).

"[A]n ineffective assistance claim should be resolved, not in piecemeal fashion, but as a totality after an evidentiary hearing in the trial court where the attorney whose conduct is in question may have an opportunity to testify." (Internal quotation marks omitted.) State v. Mims, supra, 61 Conn. App. 409, quoting State v. Laracuente, 57 Conn. App. 91, 97, 749 A.2d 34, cert. denied, 253 Conn. 923, 754 A.2d 798 (2000). Therefore, we conclude that the defendant's claim is not properly pursued on direct appeal.

exclude evidence of a drug transaction where he had not been notified that the state had destroyed the actual evidence, (4) a judge trial referee improperly ordered the evidence to be destroyed without the consent of the parties and (5) the state violated his due process rights by failing to disclose the destruction of the evidence to him prior to trial. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's claims. On January 7, 1997, Detective Carl Caler of the Willimantic police department and the statewide narcotics task force (task force) went to 351 Central Avenue, apartment three, in Norwich, spoke to Connie Gordon and inquired about purchasing cocaine. He negotiated a sale of one "rock" (a piece of crack cocaine) for a price of $20. Gordon pointed to a black male, as yet unknown to Caler, sitting at a nearby table, who appeared to be cutting crack cocaine. She instructed Caler to get the cocaine from him, telling the man to "give him one." There were more than two dozen similar pieces on the table in front of the man. The man gave one of the rocks to Caler. Caler had opportunities on several future occasions to meet with that man, whom Caler eventually identified as the defendant.

Following that transaction, Caler met with Detective Mark Rankowitz of the Norwich police department, who also was assigned to the task force. Rankowitz performed a field chemical test on the rock that Caler had purchased, which resulted in a positive test for cocaine. Rankowitz then put the rock in a plastic bag, heat sealed the bag, and affixed a tag to it on which he had written the date and time of seizure, the city in which Caler obtained the evidence, his name, his badge number and the police case number. The normal practice is to assign a separate police case number to each transaction.

Caler and Rankowitz then arranged to make another purchase on March 24, 1997, at a different location. When Caler arrived at that location, the person he had intended to meet was not present, but the defendant was present. The defendant informed Caler that he could get cocaine, and the two drove to another address. Caler drove his vehicle, and the defendant rode as passenger.

When they arrived, the defendant went into the house, obtained cocaine from someone inside who had agreed in advance to provide it to him and returned with two rocks of cocaine, which he sold to Caler. The driveway of that house, where the transaction took place, is within 1500 feet of Saint Joseph Elementary School in Norwich. After returning the defendant to the place where they had met, Caler met with Rankowitz and gave him the two rocks of cocaine. Rankowitz placed them in a plastic bag, which was then heat sealed and labeled. Additional facts will be discussed as they become relevant to the claims on appeal.

I

The defendant first claims that the court improperly permitted the state to introduce evidence that the substance that he sold to an undercover detective was cocaine when the state had destroyed the actual substance. The defendant bases his claim on his contention that the state failed to prove adequately the chain of custody from the seizure of the substance to its delivery to the state toxicological laboratory, and that therefore both the fact of its seizure and the testimony about its chemical composition should have been excluded from evidence at trial. We disagree.

The following additional facts and procedural history are relevant to our consideration of the defendant's claim. Gordon, the person to whom Caler first spoke on January 7, 1997, about purchasing crack cocaine

and who collected the money in the sale, was also prosecuted in connection with that sale. The officers documented the seizure on the appropriate form, listing Gordon as the defendant. Due to a scrivener's error, however, the incorrect police case number was written on the form.[5] When Gordon's case was disposed of, the court, *Hon. Joseph J. Purtill*, judge trial referee, ordered the substance destroyed, and it was in fact destroyed.

Following its seizure, the substance was sent for testing to the state's toxicology laboratory, where Joel R. Milzoff, a toxicologist, analyzed the substance and identified it in his report as cocaine in a freebase or nonsalt form. The defendant objected to the introduction at trial of both the report Milzoff prepared and Milzoff's testimony. The court overruled both objections.

Before turning to the substance of the defendant's claim concerning the failure to preserve the evidence, we first address his additional claims that the state failed to lay an adequate foundation for the introduction of either the toxicological report or Milzoff's testimony about the nature of the substance that was seized.

The defendant claims that the chain of custody of the seized drugs was never adequately proven at trial. He specifically points to a "gap" in that chain created by the difference between the case numbers noted on the exhibits, which differed by one digit from the case number of the defendant's arrest. At trial, Rankowitz testified as to the cause of that difference, a scrivener's error. The court found his testimony to be credible. The defendant at trial failed to produce any evidence

---

[5] The case number written on the form was Z97-00322-7; however, the correct case number for the defendant in this case was Z97-00322-8. The former number corresponds to the case number for the case concerning Connie Gordon. That number, once used on the form, continued to be used with reference to the evidence.

to rebut Rankowitz's testimony or to offer a contrary explanation. The chain of custody was thus sufficiently demonstrated by the testimony of all of the officers who handled the evidence from its seizure to its delivery to the laboratory, with the gap filled by Rankowitz' explanation. In *State* v. *Slimskey*, 59 Conn. App. 341, 349, 757 A.2d 621, cert. granted on other grounds, 254 Conn. 938, 761 A.2d 764 (2000), we approved of the admission of evidence with a similar gap in the chain of custody.

"In *State* v. *Morales*, 232 Conn. 707, 727, 657 A.2d 585 (1995), our Supreme Court held that in determining whether the state's failure to preserve evidence has resulted in a violation of a defendant's due process right under article first, § 8 [of the constitution of Connecticut], a trial court must employ the [*State* v. *Asherman*, 193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985)] balancing test, weighing the reasons for the unavailability of the evidence against the degree of prejudice to the accused. More specifically, the trial court must balance the totality of the circumstances surrounding the missing evidence, including the following factors: the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its nonavailability to the defense and the prejudice to the defendant caused by the unavailability of the evidence." (Internal quotation marks omitted.) *State* v. *Kilroy*, 61 Conn. App. 164, 173, 763 A.2d 59 (2000).

In this situation, it is not entirely the case that the evidence was missing. Although the substance seized was destroyed by the police, it was first tested by the state's toxicology laboratory, which found that it was cocaine in a freebase or nonsalt form. The report that the laboratory prepared is admissible as a business record, pursuant to General Statutes § 52-180 (a), which

provides in relevant part: "Any writing or record . . . made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter." Our Supreme Court has stated that "[s]ection 52-180 should be liberally construed. . . . Appellate review of the admission of a document under § 52-180 is limited to determining whether the trial court abused its discretion." (Citations omitted.) *River Dock & Pile, Inc.* v. *O & G Industries, Inc.*, 219 Conn. 787, 795, 595 A.2d 839 (1991).

The report that Milzoff prepared clearly fits that definition. It was made in the regular course of his business with the state's toxicological laboratory. It was the regular course of the laboratory's business to make a report of its findings as to the composition of an unidentified substance thought to be narcotics. The report was made either contemporaneously with the actual analysis of the substance or shortly thereafter. It thus fits the definition of a "business record," and therefore, under § 52-180, "shall be admissible as evidence of the act, transaction, occurrence or event" at issue.

Further, General Statutes § 54-36g, the statute governing the destruction of controlled substances seized in arrests, governs what should happen in criminal cases tried following the destruction of the controlled substance. Section 54-36g (a) provides in relevant part: "[The order of destruction] shall be in writing and shall provide for the analysis of representative samples of such controlled drug . . . . The results on such analysis shall be recorded on a certificate signed by the person making the analysis, witnessed and acknowledged pursuant to section 1-29. Such certificate *shall be prima*

*facie evidence of the composition and quality* of such controlled drug [or] controlled substance . . . ." (Emphasis added.) The last sentence quoted would be meaningless unless the legislature had contemplated that the destruction might take place *before* the trial of the defendant from whom the drugs were seized and inserted it to ensure that the destruction of the drugs would not provide the defendant with a simple way to avoid prosecution, namely to demand production of the actual drugs and to move for dismissal when informed that they had been destroyed.

With both the report and Milzoff's testimony before the court, the question is whether, notwithstanding their presence, the absence of the actual substance warrants reversal of the judgment. Although the actual substance would be material evidence of whether the defendant actually sold cocaine to the police, the record of the testing by the toxicologist who performed that testing and his testifying at trial serve significantly to reduce the likelihood of mistaken interpretation by the court. The record amply demonstrates further that the reason for the nonavailability of the evidence was the result of nothing other than a clerical error. Because the laboratory report was available, there could have been no discernible prejudice to the defendant from the unavailability of the actual drugs.

We thus reject the claim by the defendant and conclude that the court did not improperly permit evidence of the character of the substance seized when the actual substance had been destroyed.

## II

The defendant next claims that the court improperly refused to exclude evidence of a drug transaction because the defendant had not been notified that the state had destroyed the actual evidence. We are not persuaded.

Because the defendant did not preserve his claim at trial, he seeks review under the plain error doctrine pursuant to Practice Book § 60-5.[6] "[Our Supreme Court] previously [has] held that [p]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 25, 664 A.2d 719 (1995). . . . *Santopietro* v. *New Haven*, 239 Conn. 207, 216, 682 A.2d 106 (1996). An important factor in determining whether to invoke the plain error doctrine is whether the claimed error result[ed] in an unreliable verdict or a miscarriage of justice. . . . Plain error review may be appropriate where consideration of the question is in the interest of public welfare . . . . *DiNapoli* v. *Cooke*, 43 Conn. App. 419, 426, 682 A.2d 603, cert. denied, 239 Conn. 951, 686 A.2d 124 (1996), cert. denied, 520 U.S. 1213, 117 S. Ct. 1699, 137 L. Ed. 2d 825 (1997)." (Internal quotation marks omitted.) *State* v. *Velasco*, 253 Conn. 210, 218–19 n.9, 751 A.2d 800 (2000). "Furthermore, the defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . Moreover, because the claim raised here is nonconstitutional, the defendant must demonstrate that the trial court's improper action likely affected the result of his trial." (Citation omitted; internal quotation marks omitted.) *State* v. *Cobb*, 251 Conn. 285, 389, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000).

The defendant relies on § 54-36g (a), which provides in relevant part: "At any time after the seizure of a

---

[6] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

controlled drug or a controlled substance . . . in connection with a criminal arrest . . . the prosecuting official of the court for the geographical area in which the criminal offense is alleged to have been committed may petition the court for destruction of such controlled drug [or] controlled substance . . . . After notice . . . to the defendant and his attorney, and hearing on the petition, the court may order the forfeiture and destruction of such controlled drug [or] controlled substance . . . as soon as possible. . . ."

In this case, the evidence was destroyed because the criminal case involving Gordon, the other person involved in the transaction, had been concluded. The cocaine, because of a clerical error, had been labeled with the incorrect case number, which corresponded to the case against Gordon.

The problem with the defendant's claim is that he does not, and indeed cannot, demonstrate what harm he has suffered, a clear requisite for a finding of plain error. His claim is that because he was not notified that the drugs had been destroyed, all evidence about the transaction should have been excluded from his trial. We fail to see, however, in what way the outcome of the case would have differed had the defendant been notified properly of the destruction and thus why a "manifest injustice" would result if the verdict is permitted to stand, a prerequisite for this court to find plain error.

The defendant can point to no "untaken action" by him or his trial counsel that was prevented by the failure to notify him of the destruction of the evidence. We stress that the defendant claims error not in the destruction itself, but in the mere failure to notify. The defendant is indeed correct in asserting that the law requires that he be notified and that he in fact was not notified. We can see no injury that he has incurred, however, as

a result of that oversight. We thus decline to disturb the judgment on that basis.

## III

The defendant next claims that a judge trial referee improperly ordered the drugs destroyed without the consent of the parties. We disagree.

Because the defendant did not preserve his claim at trial, he seeks review under the plain error doctrine, which is discussed in more detail in part II. The gravamen of the defendant's claim is that because General Statutes § 52-434 (a) and Practice Book § 44-19 provide that judge trial referees may only exercise jurisdiction over cases with the consent of the parties, and because the defendant never consented to the judge trial referee's jurisdiction over the case, it was unlawful for the referee to order the destruction of the drugs.

As discussed in part I, however, the judge trial referee was involved in the case when all parties believed that the drugs were connected only with the case properly before him, that of Gordon. Although that belief turned out to be inaccurate, it was nevertheless the case that at all relevant times, the parties before the judge trial referee believed that he had jurisdiction to order the destruction of the drugs.

The defendant can point to no harm that came to him as a consequence of a judge trial referee, rather than a judge, ordering the destruction of the cocaine. He posits no reason for us to conclude that a judge, acting under the same mistake of fact, would have done anything differently.

We stress that the defendant claims error not in the destruction of the evidence itself, but in the mere failure to obtain his consent to have the case heard by a judge trial referee. The defendant correctly claims that the law requires that he consent to the handling of the case

by a judge trial referee, and that such consent was not obtained because the judge trial referee was not handling the defendant's case and those involved in Gordon's case did not object. We are not persuaded, however, that the action of the judge trial referee amounted to a "miscarriage of justice" or affected the "fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Velasco*, supra, 253 Conn. 218–19 n.9. There is no plain error, and we decline to disturb the judgment on that basis.

IV

The defendant's final claim is that the prosecutor violated his due process rights by failing to inform him of the pretrial destruction of the drugs. Again, because his claim was not preserved at trial, the defendant asks this court for review under the plain error doctrine. Practice Book § 60-5. We find no plain error and therefore decline to review the defendant's claim.

We note that the defendant's claim is essentially identical to that raised in part II, the only difference being that the alleged impropriety here is on the part of the prosecutor as opposed to the court. The problem with the defendant's claim is that he does not, and indeed cannot, demonstrate what harm he has suffered, a clear requisite for a finding of plain error. His claim is that because he was not notified that the drugs had been destroyed, all evidence about the transaction should have been excluded from his trial. We fail, however, to see what difference there would have been in the outcome of the case had the defendant been notified by the prosecutor of the destruction and thus why a "manifest injustice" would result if the verdict is permitted to stand, a prerequisite for this court to find plain error.

The defendant can point to no "untaken action" by him or his trial counsel that was prevented by the prose-

cutor's failure to notify him of the destruction of the evidence. Again, the defendant's alleged error is the mere failure to notify. The defendant correctly asserts that the law requires that he be notified and that he in fact was not notified. We can see no injury that he has incurred, however, as a result of that oversight. We thus decline to disturb the judgment on that basis.

The judgment is affirmed.

In this opinion the other judges concurred.