STATE OF CONNECTICUT *v.* DARREN A. MADISON
(AC 29138)

Flynn, C. J., and Harper and McDonald, Js.

Argued December 2, 2008—officially released August 11, 2009

*Katherine C. Essington*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *David A. Gulick*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Darren A. Madison, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), and attempt to sell narcotics by a person who is not drug-dependent in violation of General Statutes §§ 21a-278 (b) and 53a-49 (a) (2). On appeal, the defendant claims that the court improperly denied his motion to suppress "rocks"[1] of crack cocaine found by a police officer in the vehicle the defendant was driving. We affirm the judgment of the trial court.

After a hearing on the motion to suppress, the court stated in an oral decision that it found the two police officers' testimony to be credible for the most part and found the following facts. On October 18, 2006, Waterbury police officers were conducting surveillance from their unmarked police car of a pay telephone often used for drug transactions. Between fifteen and twenty arrests have resulted from surveillance of that telephone. Shortly before 9 p.m., from that location the officers followed a woman, later identified as Heather Marinelli, who drove to a nearby parking lot located in a high drug trafficking area. Shortly thereafter, a second vehicle, driven by the defendant, pulled up alongside Marinelli's vehicle. Marinelli then exited her vehicle and leaned into the defendant's vehicle. At that time, the

---

[1] "Rock" is street language for a piece of crack cocaine. *State* v. *Wright*, 63 Conn. App. 138, 141, 772 A.2d 739, cert. denied, 257 Conn. 909, 782 A.2d 135 (2001).

officers began converging on the two vehicles, apparently unnoticed. The officers were driving an unmarked vehicle and wore plain clothes.

Officer Eric Medina, as he was approaching the defendant's vehicle, observed Marinelli hand money to the defendant, who apparently did not notice the officers. The court stated that it was clear that when police arrived at the defendant's vehicle and were identified as police officers, they were noticed by the occupants. The defendant reacted to Medina by putting up his hands and throwing into the backseat items that Medina identified as crack cocaine rocks.

The court concluded that, when the officers approached the defendant's vehicle, they did not have a reasonable and articulable suspicion of drug activity to warrant an investigative seizure of the defendant. It also concluded, however, that the officers had not yet seized the defendant. The court stated that the observation of Marinelli giving money to the defendant constituted an articulable fact that warranted an investigative seizure of the defendant. The court found that the seizure occurred subsequently, when Medina identified himself as a police officer and was noticed by the defendant. The court found that the defendant's reaction to Medina established probable cause to remove the defendant from his car and to search the vehicle. The court denied the defendant's motion to suppress the crack cocaine. The defendant thereafter did not seek articulation of the court's oral decision.

We begin our analysis with our standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must

determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Colvin,* 241 Conn. 650, 656, 697 A.2d 1122 (1997).

On appeal, the defendant claims that the crack cocaine should have been suppressed because it was discovered as a result of an unlawful seizure of his person, in this case, during an investigatory or *Terry* stop. See *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1969). A person is so seized within the meaning of the constitution of Connecticut, article first, §§ 7 and 9, when "by means of physical force or a show of authority, his freedom of movement is restrained. . . . The key consideration is whether, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (Citation omitted; internal quotation marks omitted.) *State* v. *Burroughs,* 288 Conn. 836, 844–45, 955 A.2d 43 (2008). "When considering the validity of a *Terry* stop, our threshold inquiry is twofold. . . . First, we must determine at what point, if any, did the encounter between [the police officer] and the defendant constitute an investigatory stop or seizure. . . . Next, [i]f we conclude that there was such a seizure, we must then determine whether [the police officer] possessed a reasonable and articulable suspicion at the time the seizure occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Santos,* 267 Conn. 495, 503, 838 A.2d 981 (2004).

Our Supreme Court, in *State* v. *Burroughs,* supra, 288 Conn. 844 n.3, stated that our review of the first issue presents a mixed question of law and fact that also requires this court to make an independent legal determination of whether a seizure occurred. In making this determination, we conclude in this case that the

court's historical factual findings were either undisputed, not clearly erroneous or were supported by substantial evidence. In this case, there were no flashing lights or sirens, officers in uniform, application of physical force on the defendant, use of language or tone of voice indicating that compliance might be compelled or blockage of the defendant's vehicle before Medina identified himself at the defendant's driver's side window. See id., 846–47. We therefore conclude that the court properly found that the police made no seizure of the defendant before Medina was at the defendant's window and identified himself as a police officer.

With respect to our independent legal determination, at the hearing on the motion to suppress, the driver of the police car, Sergeant Gary Angon, testified that it was his job to approach a drug transaction as safely and inconspicuously as possible. Once the police car was stopped, all the officers would get out of it. The police car driver would approach the other car at the driver's side to be sure that the other car remained stopped. The officers in doing so knew to watch the hands of those in the other vehicle so that evidence would not be destroyed or weapons used. Angon also testified that Medina, who had been sitting in the front passenger seat of the police car, left the car when it was coming to a stop and went "right" to the driver's side of the defendant's vehicle as the police car's lights were turned on. It was then that Medina indicated that he was "set." Angon, at that point, had seen the defendant raise his hands and believed that it was all right to move.[2] Angon, who was wearing a bulletproof vest,

[2] With respect to the safety of police officers, our Supreme Court has stated: "Connecticut courts repeatedly have noted that [t]here is a well established correlation between drug dealing and firearms. . . . Federal courts also have recognized this fact of life." (Citations omitted; internal quotation marks omitted.) *State* v. *Mann*, 271 Conn. 300, 325, 857 A.2d 329 (2004), cert. denied, 544 U.S. 949, 125 S. Ct. 1711, 161 L. Ed. 2d 527 (2005).

left the police car and approached the defendant's vehicle on the passenger side. A third officer in the backseat of the police car also went to the passenger side of the defendant's vehicle, as there was a passenger in the passenger seat and Marinelli.

Medina testified that the unmarked police car was approximately twenty feet from the defendant's vehicle when it parked next to the Marinelli vehicle. The officers had watched Marinelli enter the parking lot and park her car facing the lot opposite the officer's location. After about five to ten minutes, the defendant drove his vehicle into the lot and backed up next to Marinelli's vehicle, with the defendant's passenger side next to Marinelli's driver's side. When Marinelli went from the driver's side of her vehicle adjacent to the passenger side of the defendant's vehicle, the officers approached corner to corner to the defendant's vehicle, and the police car's front lights were directly on the front fender of the defendant's vehicle. As Medina began to exit the police vehicle carrying a flashlight, he saw Marinelli hand money to the defendant. As Medina approached the defendant's vehicle on foot, Medina saw the defendant take the money while looking at Marinelli, who was at the passenger side window. Medina had his badge on his chest, identified himself as a police officer at the defendant's driver's side window and saw the defendant put up his hands and throw what appeared to be rocks of crack cocaine behind him.

The defendant argues that when Medina left the police vehicle with his badge displayed, the investigative seizure occurred prior to the existence of a reasonable and articulable suspicion. The defendant also argues that at that time, the police vehicle blocked the defendant's vehicle. The evidence, as the state concedes, is that Angon was to prevent the defendant's vehicle from moving. Angon testified that he was to exit the police car when it was stopped and to go to

the driver's side of the defendant's vehicle. As Angon was still in the driver's seat of the police car and leaning out of the vehicle, he saw the defendant put his hands up. Angon then went to the passenger side of the defendant's vehicle. As Medina testified, the police car was stopped corner to corner to the defendant's driver's side front fender, with the headlights directly on that fender. We cannot in these circumstances conclude that the moving police car blocked the defendant's vehicle before Medina saw Marinelli handing money to the defendant.

We now consider the defendant's claim that the police did not have a reasonable and articulable basis for seizing him when Medina identified himself to the defendant as a police officer. The state concedes that the defendant was seized at this time, and the court found that Medina's actions then caused the defendant to throw the crack cocaine into the backseat of the car.

The defendant argues that the police lacked a reasonable and articulable basis for seizing him and that under the fruit of the poisonous tree doctrine, the evidence must be suppressed. See *State* v. *Milotte*, 95 Conn. App. 616, 620, 897 A.2d 683 (2006), appeal dismissed, 281 Conn. 612, 917 A.2d 25 (2007). We conclude, to the contrary, that the police had a reasonable and articulable basis for seizing or stopping the defendant at that time.

The defendant asks us to review the issue of reasonable and articulable suspicion under the fourth amendment to the United States constitution and the constitution of Connecticut, article first, §§ 7 and 9. Our Supreme Court has held that these provisions in this respect mirror each other. *State* v. *Donahue*, 251 Conn. 636, 644, 742 A.2d 775 (1999), cert. denied, 531 U.S. 924, 121 S. Ct. 299, 148 L. Ed. 2d 240 (2000).

"The determination of whether a reasonable and articulable suspicion exists rests on a two part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct." (Internal quotation marks omitted.) *State* v. *Santos*, supra, 267 Conn. 504. "Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion." (Internal quotation marks omitted.) *State* v. *Torres*, 230 Conn. 372, 379, 645 A.2d 529 (1994). "In determining whether a detention is justified in a given case, a court must consider if, relying on the whole picture, the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity." *State* v. *Lipscomb*, 258 Conn. 68, 75–76, 779 A.2d 88 (2001). The threshold for reasonable and articulable suspicion requires less than probable cause; *State* v. *Thomas*, 98 Conn. App. 542, 548, 909 A.2d 969 (2006), cert. denied, 281 Conn. 910, 916 A.2d 53 (2007); which requires less than a preponderance of the evidence. See *State* v. *Johnson*, 286 Conn. 427, 435, 944 A.2d 297, cert. denied, 555 U.S. 883, 129 S. Ct. 236, 172 L. Ed. 2d 144 (2008). The determination is not a technical one, but is informed by the factual and practical considerations of everyday life. Id. In this respect, the perceptions of an experienced police officer "might have more significance to him in determining whether the law is being violated at a given time and place than they would have to a layman . . . ." (Internal quotation marks omitted.) *State* v. *Trine*, 236 Conn. 216, 232, 673 A.2d 1098 (1996). The court's legal conclusion is subject to our plenary review. See *State* v. *Torres*, supra, 379.

The defendant argues that the police did not have a reasonable and articulable basis for stopping him

because his conduct was "capable of innumerable innocent explanations" and that the meeting of two individuals "in a high crime area" does not rise to the level of reasonable and articulable suspicion. We disagree.

"[A]n investigative stop can be appropriate even where the police have not observed a violation because a reasonable and articulable suspicion can arise from conduct that alone is not criminal." (Internal quotation marks omitted.) *State* v. *Lipscomb*, supra, 258 Conn. 76. We do not consider whether the defendant's conduct possibly was consistent with innocent activity but, rather, whether the rational inferences that can be derived from it reasonably suggest criminal activity to a police officer. See id., 75–76; see also *State* v. *Trine*, supra, 236 Conn. 230–31. Further, although the defendant correctly argues that his presence in a high crime area alone is insufficient to establish a reasonable and articulable suspicion, the nature of the area where he was detained properly is part of our reasonable and articulable suspicion analysis. See *State* v. *Lipscomb*, supra, 78.

In this case, the court found credible the officers' testimony that (1) Marinelli made a ten to fifteen second telephone call from a pay telephone that often was used in drug transactions, (2) immediately after, Marinelli drove to a nearly empty parking lot located in a high drug trafficking area and (3) shortly thereafter, the defendant drove his vehicle to the parking lot and parked alongside Marinelli's vehicle. The officers also testified that Marinelli immediately exited her vehicle, leaned into the passenger side of the defendant's vehicle and handed cash to the defendant, who was driving the vehicle. Medina and Angon, experienced narcotics investigators, testified that, on the basis of their experience, this behavior was typical for a drug transaction. We conclude that these facts gave rise to a reasonable and articulable basis for conducting an investigatory

seizure of the defendant. See *State* v. *Straub*, 90 Conn. App. 147, 151, 877 A.2d 866 (using telephone known to be used frequently in drug sales, watching for cars for fifteen minutes and entering car after speaking to driver provided reasonable and articulable suspicion), cert. denied, 275 Conn. 927, 883 A.2d 1252 (2005).

We disagree with the defendant's claim that Medina's observation of Marinelli giving the defendant money should not be part of our analysis of whether the police had a reasonable and articulable basis for an investigatory stop. The defendant argues that when Medina observed the exchange, the police already had seized the defendant within the meaning of the constitution of Connecticut, article first, §§ 7 and 9,[3] and that, at that time, the seizure was unlawful because the police did not have a reasonable and articulable basis for seizing him and, therefore, the subsequent seizure of the cocaine rocks was illegal and the evidence should be suppressed. See *Wong Sun* v. *United States*, 371 U.S. 471, 485, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) (evidence obtained as result of illegal detention must be suppressed). We conclude to the contrary that the court correctly found that Medina's observation of the exchange of money occurred before the defendant was seized. We also conclude that the observation of the money delivery was not the fruit of any illegal investigative stop.

"Under the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality. . . . All evidence is not, however, a fruit of

---

[3] The defendant also raises his claim under the fourth amendment to the United States constitution. It is well established that under the constitution of Connecticut, article first, §§ 7 and 9, the definition of a "seizure" is less restrictive than it is under the fourth amendment to the United States constitution. See *State* v. *Burroughs*, supra, 288 Conn. 845 n.6. We therefore do not need to address the defendant's claim under the United States constitution.

the poisonous tree simply because it would not have been discovered but for the illegal action of law enforcement officials. . . . Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. . . . The initial determination is, therefore, whether the challenged evidence is in some sense the product of illegal government activity." (Citations omitted; internal quotation marks omitted.) *State* v. *Colvin*, supra, 241 Conn. 656–57.

When the challenged evidence has an independent source, an unlawful seizure does not place the police in a worse position than they would have been in absent the unlawful seizure. Id., 660. Absent a causal connection to an unlawful seizure, a plain view observation of incriminating evidence can form the basis of a lawful search and seizure even if the observation occurred after or during an unlawful seizure. Id., 658.

In this case, the evidence was that Medina observed the exchange of money while he was leaving the police car and going into a parking lot outside of the defendant's car. The defendant does not argue, nor could he, that Medina did not have the legal right to observe activities taking place in his plain view from a location in the parking lot. See id., 660 (police may approach vehicle and look through window). The defendant disputes that, at the time of the exchange of money, he had not been seized, but he cannot show that a seizure of him in any way caused the exchange to occur. There was no evidence at the hearing that the defendant knew the police were present when he began a hand-to-hand drug transaction with Marinelli. On the contrary, common sense dictates that the police presence would have decreased the likelihood that the defendant and Marinelli would begin their illegal transaction. We do

not conclude that any unlawful seizure of the defendant at the time of the exchange of money caused Medina to observe it in plain view, and Medina's conduct did not cause the exchange to occur. See id. (unlawful arrest of defendant does not result in suppression of cocaine discovered moments later in plain view in defendant's vehicle). Accordingly, we conclude that Medina's observation of the exchange properly is part of our analysis of whether there was a reasonable and articulable basis for seizing the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.