STATE OF CONNECTICUT *v.* JEFFREY RODRIGUEZ
(AC 30766)

Flynn, C. J., and Beach and Pellegrino, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued February 9—officially released May 18, 2010

*Gary A. Mastronardi*, for the appellant (defendant).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Richard L. Palombo, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Jeffrey Rodriguez, appeals from the judgment of conviction, pursuant to a conditional plea of nolo contendere,[1] to the charges of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and possession of narcotics with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b). On appeal, the defendant claims that the court improperly denied his motion to suppress. We disagree and affirm the judgment of the trial court.

The court reasonably could have found the following facts. On March 3, 2008, at approximately 10:30 a.m.,[2] Officer David Riehl, a member of the Bridgeport police department for more than eighteen years and the department's tactical narcotics team since 2004, was conducting surveillance of a vehicle on Boston Avenue in Bridgeport. After the vehicle turned onto Bell Street, a one-way residential street with parking on both sides, and parked on the side of the street, Riehl discontinued surveillance and continued south. Shortly thereafter, he

---

[1] The defendant entered conditional pleas of nolo contendere, thus preserving his right to challenge the ruling on the motion to suppress. The court found that a ruling on the motion to suppress would be dispositive of the defendant's case. See General Statutes § 54-94a.

[2] The court found that the weather that morning was bright and normal, with no adverse weather conditions.

encountered a black Subaru driven by the codefendant, Joshua Milks, parked in the street, blocking his passage. Because there were cars parked on both sides of the street, there was only room for one car to fit down the center of the street. Riehl stopped his police cruiser approximately three feet from the Subaru.

At that point, Riehl observed Milks speaking with the defendant, who was the occupant of a Nissan Maxima parked on the left side of the street, parallel to the Subaru. Riehl then observed Milks open his door and, leaning over with his right hand into the window of the defendant's car, hand money to the defendant. The defendant then handed an item or small items back to Milks. Milks subsequently left in the Subaru, proceeding south on Bell Street. Based on his experience and training, Riehl believed that he had observed a drug transaction and requested assistance from other members of the narcotics team. Riehl proceeded to follow Milks' vehicle while his backup, Lieutenant Christopher Lamaine, who had arrived on the scene, drove his vehicle alongside the defendant's vehicle.

Lamaine, a member of the police department for seventeen years and the commanding officer of the department's narcotics division, parked his unmarked car at a forty-five degree angle beside the defendant's vehicle. Lamaine exited his car and approached the defendant's vehicle with his gun drawn. As he approached the defendant's vehicle, he observed through the windshield and driver's side window the defendant holding money and a plastic bag containing smaller bags with white powder. Lamaine immediately identified himself and ordered the defendant to show his hands. Lamaine witnessed the defendant scramble to hide the money and the plastic bag. Additional officers arrived on the scene, some also with their weapons drawn, and the defendant was removed from the automobile. A subsequent search of both vehicles revealed the presence of narcotics similar

in packaging. Both the defendant and Milks were charged with possession of and sale of narcotics.

On September 29, 2008, the defendant filed a motion to suppress any and all evidence of narcotics seized from him or Milks as a result of what the defendant alleged was an unlawful arrest. Specifically, the defendant contended that the police conducted a warrantless arrest without probable cause. On October 3, 2008, the court conducted an evidentiary hearing and heard testimony from Riehl and Lamaine. The defendant called one witness and did not testify himself. Thereafter, on November 26, 2008, the court issued a memorandum of decision denying the defendant's motion to suppress. The defendant entered a conditional plea of nolo contendere to one count of possession of narcotics with intent to sell by a person who is not drug-dependent and one count of possession of narcotics with intent to sell within 1500 feet of a school. He was sentenced to a total effective term of ten years incarceration. This appeal followed. Additional facts and procedural history will be provided as necessary.

Our rules of practice provide: "Upon motion, the judicial authority shall suppress potential testimony or other evidence if it finds that suppression is required under the constitution or laws of the United States or the state of Connecticut." Practice Book § 41-12; see also General Statutes § 54-33f. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Citations omitted; internal quotation

marks omitted.) *State* v. *Colvin*, 241 Conn. 650, 656, 697 A.2d 1122 (1997).

On appeal, the defendant claims that the drugs should have been suppressed because they were discovered as a result of an unlawful seizure of his person, in this case, during an arrest or investigatory stop. See *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). A person is seized within the meaning of the constitution of Connecticut, article first, §§ 7 and 9, when "by means of physical force or a show of authority, his freedom of movement is restrained. . . . The key consideration is whether, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (Citation omitted; internal quotation marks omitted.) *State* v. *Burroughs*, 288 Conn. 836, 844–45, 955 A.2d 43 (2008). "When considering the validity of a *Terry* stop, our threshold inquiry is twofold. . . . First, we must determine at what point, if any, did the encounter between [the police officer] and the defendant constitute an investigatory stop or seizure. . . . Next, [i]f we conclude that there was such a seizure, we must then determine whether [the police officer] possessed a reasonable and articulable suspicion at the time the seizure occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Santos*, 267 Conn. 495, 503, 838 A.2d 981 (2004).

According to the court, "under the circumstances presented here, there is no question that a seizure occurred once the defendant's car was blocked by Lieutenant Lamaine's vehicle and the defendant was not free to leave." There is no dispute that the defendant was seized by that point. Thus, the defendant asks us to review whether the police had a reasonable and articulable basis for seizing or stopping the defendant and, if so, whether Lamaine's actions during the investigatory detention constituted a de facto arrest.

"The determination of whether a reasonable and articulable suspicion exists rests on a two part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct. . . . Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion. . . . In determining whether a detention is justified in a given case, a court must consider if, relying on the whole picture, the detaining officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . The threshold for reasonable and articulable suspicion requires less than probable cause . . . . The determination is not a technical one, but is informed by the factual and practical considerations of everyday life. . . . In this respect, the perceptions of an experienced police officer might have more significance to him in determining whether the law is being violated at a given time and place than they would have to a layman . . . . The court's legal conclusion is subject to our plenary review." (Citations omitted; internal quotation marks omitted.) *State* v. *Madison*, 116 Conn. App. 327, 335, 976 A.2d 15, cert. denied, 293 Conn. 929, 980 A.2d 916 (2009).

The defendant argues that Lamaine's action was based upon Riehl's "bare observation of the innocent acts of one person handing an unknown amount of currency to another person and then being handed back an unknown [item]." We disagree. "[A]n investigative stop can be appropriate even where the police have not observed a violation because a reasonable and articulable suspicion can arise from conduct that alone is not criminal. . . . We do not consider whether the

defendant's conduct possibly was consistent with innocent activity but, rather, whether the rational inferences that can be derived from it reasonably suggest criminal activity to a police officer." (Citation omitted; internal quotation marks omitted.) *State* v. *Madison*, supra, 116 Conn. App. 336.

The facts support the court's determination that Lamaine had a reasonable and articulable suspicion to make an investigatory stop. Riehl was passing down the street when Milks' vehicle blocked him from passing. Riehl had no choice but to remain there until Milks moved his vehicle. It was at this point that Riehl witnessed the drug transaction between the defendant and Milks. This transaction occurred in an area known for narcotics activity, with the defendant sitting in a vehicle in a manner consistent with drug related activity. Riehl then witnessed the defendant, after engaging in a brief conversation with Milks, accept money from Milks through the window of his car. At that point, the defendant handed Milks a small item or items. Immediately after this exchange, Milks drove off in his vehicle, while the defendant remained in his vehicle parked on Bell Street. The transaction occurred in similar location and manner to many previous drug transactions witnessed by Riehl during his eighteen years as a police officer. Based on these facts, Riehl determined that he had witnessed a sale of narcotics and called for Lamaine to assist in investigating what he believed was a drug transaction. As Lamaine approached the defendant's vehicle, he observed through the windshield and driver's side window the defendant holding money and a plastic bag containing smaller bags with white powder that appeared to be drugs. We conclude that on the basis of the foregoing facts, Lamaine had a reasonable and articulable suspicion to make an investigatory stop.

The defendant also claims that the actions of Lamaine constituted an arrest requiring probable cause. We disagree. The defendant suggests that Lamaine's decision

to draw his weapon and approach the defendant transformed the situation into a de facto arrest. As the court found, Lamaine's observation of the defendant in possession of narcotics and currency occurred "within seconds" of his seizing the defendant. The investigation itself "last[ed] no longer than [was] necessary to effectuate the purpose of the stop." (Internal quotation marks omitted.) *State* v. *Jenkins*, 104 Conn. App. 417, 426, 934 A.2d 281 (2007). It is clear that at the point Lamaine witnessed the defendant in possession of drugs, there was probable cause to arrest him.

Therefore, the defendant essentially contends that a transformation from an investigative stop into a de facto arrest occurred during the short seconds after Lamaine exited his vehicle and approached with his weapon drawn. See *State* v. *Mann*, 271 Conn. 300, 328, 857 A.2d 329 (2004), cert. denied, 544 U.S. 949, 125 S. Ct. 1711, 161 L. Ed. 2d 527 (2005), citing *United States* v. *Sharpe*, 470 U.S. 675, 686, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985) (in assessing reasonableness under *Terry*, courts should "consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing"). As the court explained, "Lamaine was conducting a stop of an individual that was believed to have just completed a narcotics sale from his vehicle. His approach of the vehicle with a weapon drawn is not unreasonable in light of the recognized connection between weapons and drug dealing." "Connecticut courts repeatedly have noted that [t]here is a well established correlation between drug dealing and firearms. . . . Federal courts also have recognized this fact of life." (Citations omitted; internal quotation marks omitted.) *State* v. *Mann*, supra, 325.

Thus, we conclude that Lamaine had a reasonable and articulable basis for seizing the defendant and, upon witnessing the defendant in possession of narcotics and

currency through the window and windshield of his parked car, probable cause to make the subsequent arrest. The court properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.