STATE OF CONNECTICUT *v.* WALTER JENKINS
(AC 23826)

Lavery, C. J., and McLachlan and Dupont, Js.

Argued February 9---officially released May 11, 2004

*Jeremiah Donovan,* special public defender, for the appellant (defendant).

*James A. Killen,* senior assistant state's attorney, with whom, on the brief, was *Matthew C. Gedansky,* state's attorney, for the appellee (state).

LAVERY, C. J. The defendant, Walter Jenkins, appeals from the judgment of conviction rendered by the trial court subsequent to his conditional plea of nolo contendere to the charges of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), and attempt to commit robbery in the third degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-136. On appeal, the defendant claims that the court (1) improperly determined that he had initiated discussion with the police after having properly invoked his right to counsel, thus allowing questioning to recommence, (2) improperly found that his confession was given knowingly, voluntarily and intelligently, and (3) abused its discretion by refusing to open the suppression hearing in order to allow him to testify. We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. Shortly after 3 p.m. on April 12, 1999, three males, including the defendant, entered the United States post office in Andover, supposedly to mail a package. As a clerk was processing the package, the men jumped over the counter. One of the men was brandishing what appeared to be a firearm. The defendant emptied the cash drawer while his companions seized a money order imprinting machine and ordered one of the clerks to open the safe. The safe was opened and depleted of its contents.

The individual with the firearm forced two female clerks into a bathroom at gunpoint. A third clerk remained in hiding. The men then left the post office to meet a fourth accomplice whose role was to drive the getaway vehicle. That individual, however, failed to meet them. The three men attempted to use keys they had stolen from one of the postal clerks to start a car

in the parking lot, but chose the incorrect vehicle. They then assaulted a female postal customer outside of the post office in an attempt to steal her vehicle. She did not, however, relinquish her keys, and the men subsequently fled from the scene on foot. Another postal customer in the parking lot witnessed the assault.

At that point, the fourth individual appeared with the getaway vehicle and picked up the defendant and one of his accomplices. The car proceeded west to Wales Road in Andover. The men exited the vehicle and attempted to locate the man they had left behind. They also removed the clothing they wore during the robbery and disposed of it in a small culvert. They then fled on foot. State police captured the defendant within one hour of the robbery. State police also apprehended two of his partners within a couple of hours. The three men were taken to the state police barracks in Colchester for questioning, where they ultimately gave written statements concerning the robbery and assault.

Richard Bedard, a detective with the state police, and Edward Cahill, an inspector with the United States Postal Service met with the defendant. The defendant was advised of his *Miranda* rights by Bedard. He was under arrest and in police custody at that time. The defendant signed the notice of rights form, acknowledging that he had been advised of his rights but did not sign the waiver section of the form. He told Bedard that he did not want to waive his rights or speak with the detective without an attorney present and that he wanted to make a telephone call. Bedard did not question the defendant after that. He allowed the defendant to make a telephone call.

Shortly thereafter, Bedard processed the defendant by fingerprinting and photographing him and completing a uniform arrest record. He then returned the defendant to a cell. While Bedard was conducting a property

inventory of the defendant's personal effects in a room adjacent to the defendant's cell, the defendant called out to him. The defendant informed Bedard that he wanted to be interviewed and to give a statement. Bedard told the defendant that this was unnecessary, but the defendant again expressed his desire to give a statement. Bedard summoned Cahill, and the three proceeded to an interrogation room.

Bedard again advised the defendant of his rights. The defendant read and signed the notice and waiver of rights form, and he initialed the waiver portion of the form. The defendant implicated himself and three individuals, minimizing his own involvement. The defendant never requested an attorney during the questioning, which lasted one and one-half hours. At the conclusion of the interrogation, Bedard typed the defendant's statement, which the defendant reviewed and signed. Bedard included in the statement the circumstances surrounding the defendant's earlier invocation of his right to counsel. Bedard also recorded in the statement that it was the defendant who had reinitiated conversation with himself and Cahill.[1]

---

[1] The defendant's statement, prepared by Bedard and signed by the defendant, provides in relevant part: "I am providing Detective Bedard of the Connecticut State Police and Postal Inspector Cahill with this statement at the State Police barracks in Troop K-Colchester. Initially, Detective Bedard advised me of my Notice of Rights at 5:50 P.M. at Troop K in an upstairs office. At this time I signed this form but on the bottom of this form, it said that I didn't want to talk to an attorney. I believed at this time that I should have an attorney with me so I refused to sign and be interviewed. The detectives let me use the phone and I called my girlfriend, Tamara Dunham of Amityville, New York. I only got Tamara's answering machine so I hung up. The detectives then brought me back downstairs and put me in a cell. I stayed there for a short time until they came and fingerprinted me. When we were done, I returned to the cell and a short time later, I heard someone with keys come in. I asked if I could use the phone and it was Detective Bedard. I told Bedard at this time that I also wanted to give a statement. He told me that I didn't have to but I told him I wanted to. Detective Bedard and Inspector Cahill then brought me back to the same upstairs office that we were originally in and Detective Bedard again advised me of my Notice of Rights. I read this form, signed my name, and read the last part of the

On September 24, 2002, the defendant filed a motion to suppress the aforementioned statement. A hearing was held on the motion on October 2, 2002. The court denied the motion, ruling that the state had met its burden of proof on all issues, most significantly that it was the defendant who initiated conversation with the police after having previously invoked his right to counsel. The court also found that the defendant had knowingly and intelligently waived his right to counsel after being advised of his rights a second time. The court also refused to grant the defendant's subsequent request to open the hearing in order to permit him to testify.

On October 8, 2002, the defendant entered a conditional plea of nolo contendere to the charges of robbery in the first degree in violation of § 53a-134 (a) (4), and attempt to commit robbery in the third degree in violation of §§ 53a-49 (a) (2) and 53a-136. The plea was conditioned on his right to appeal from the court's denial of his motion to suppress. The court sentenced the defendant to fifteen years imprisonment, execution suspended after twelve years, with five years probation. This appeal followed.

I

The defendant first claims that the court improperly determined that he had reinitiated discussion with Bedard and Cahill. Specifically, the defendant argues that the state failed to meet its burden of proof to establish that he had reinitiated questioning. He contends that contradictions between the testimony given by Bedard and Cahill cast doubt on both their credibility and the court's conclusion that it was the defendant who had reinitiated conversation with the authorities. We disagree.

form where it talked about not having an attorney with me. I agreed to an interview and initialed this form at 7:30 P.M."

The following additional facts are necessary for our resolution of the defendant's claim. Bedard testified that he concluded his interview of the defendant when the defendant refused to sign the waiver portion of the rights form and expressed that he did not want to speak with the detective without an attorney present. Bedard also testified that later, while he was working near the defendant's holding cell, the defendant began conversing with him and expressed his desire to make a statement. Bedard reiterated that he did not approach the defendant or initiate any type of conversation with him. Bedard even reminded the defendant at that point that he was under no obligation to make a statement.

The defendant claims that Bedard's testimony was not credible in light of conflicting testimony offered by Cahill. "Although the issue is . . . ultimately factual, our usual deference to factfinding by the trial court is qualified, on questions of this nature, by the necessity for a scrupulous examination of the record to ascertain whether such a factual finding is supported by substantial evidence." (Internal quotation marks omitted.) *State v. Hafford*, 252 Conn. 274, 295, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000).

Our inquiry into the admissibility of a confession obtained from a defendant while he or she is in custody necessarily begins with *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). See *State v. Acquin*, 187 Conn. 647, 666, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983), overruled in part on other grounds, *State* v. *Anonymous*, 240 Conn. 708, 723 n.16, 694 A.2d 766 (1997). "In that case, the United States Supreme Court held that the fifth and fourteenth amendments' prohibition against compelled self-incrimination requires that a suspect in police custody be informed specifically of his or her right to remain silent and to have an attorney

present before being questioned. . . . The court further held that [i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease . . . . and [i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present. . . . Furthermore, [i]f the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." (Citations omitted; internal quotation marks omitted.) *State* v. *Acquin*, supra, 666.

The court addressed the issue in the present appeal in *Edwards* v. *Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), in which "the United States Supreme Court held that, after an accused requests counsel, further conversations between the police and the accused *do not* violate *Miranda if the accused initiates them*." (Emphasis added.) *State* v. *Hafford*, supra, 252 Conn. 290. The Supreme Court again addressed that issue in *Oregon* v. *Bradshaw*, 462 U.S. 1039, 103 S. Ct. 2830, 77 L. Ed. 2d 405 (1983). "[T]he defendant's initiation of further conversation does not end an analysis of waiver under *Miranda*. . . . [E]ven if a conversation taking place after the accused has expressed his desire to deal with the police only through counsel, is initiated by the accused, where reinterrogation follows, the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." (Internal quotation marks omitted.) *State* v. *Hafford*, supra, 291–92.

It is uncontroverted that after being advised of his *Miranda* rights, the defendant initially invoked his right to counsel, and refused to speak to Bedard and Cahill

without his attorney present. It also is undisputed that the defendant initiated conversation with Bedard after that point. Bedard testified that the defendant repeated his desire to make a statement even after Bedard advised him that it was unnecessary for him to do so.

Despite some slight inconsistencies between the testimony given by Bedard and Cahill, the court credited the testimony of Bedard, who unequivocally stated both that he had ceased interviewing the defendant once he had invoked his right to counsel and that it was the defendant who later initiated conversation with him. It is well settled that "[i]t is the [trier of fact's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses." *State* v. *Robinson*, 81 Conn. App. 26, 34, 838 A.2d 243 (2004). "Where testimony is conflicting the trier may choose to believe one version over the other . . . as the probative force of the evidence is for the trier to determine." (Internal quotation marks omitted.) *State* v. *Santiago*, 245 Conn. 301, 318, 715 A.2d 1 (1998).

Although Cahill did indicate that Bedard had asked the defendant two or three times whether he wanted to speak to them even after the defendant initially invoked his right to counsel, Cahill also corroborated Bedard's testimony that the interview ceased once the defendant indicated that he wanted a lawyer. Cahill answered affirmatively when asked by the prosecutor whether the interview ceased when the defendant indicated that he wanted a lawyer.

Most importantly, Cahill did not offer any testimony contradicting Bedard's account of the circumstances surrounding the reinterrogation of the defendant. Cahill recounted that Bedard had informed him that the defendant wanted to make a statement and that the defendant did so after he was advised of his rights again and questioned by Bedard and Cahill. Cahill also confirmed

that the defendant had waived his rights by signing the notice of waiver form. Regardless, the court, in its discretion, chose to credit the testimony of Bedard, and accounted for any discrepancies by stating that the men had "remembered different things and different aspects of the interrogation."

We conclude, therefore, after our requisite scrupulous review of the record, that there was substantial evidence on which the court could base its decision.

II

The defendant next claims that the court improperly found that his statement was given knowingly, voluntarily and intelligently. Specifically, the defendant contends that he did not have a free and unconstrained choice whether to sign the written version of his statement prepared by Bedard because the detective "instructed" him to sign the statement. We disagree.

"The purpose of *Miranda* warnings is to assure that a confession is the product of an essentially free and unconstrained choice by its maker. . . . The state has the burden of proving by a preponderance of the evidence that the defendant knowingly and intelligently waived his *Miranda* rights . . . . [T]he state must demonstrate: (1) that the defendant *understood* his rights, and (2) that the defendant's *course of conduct* indicated that he did, in fact, waive those rights." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Santiago*, supra, 245 Conn. 320.

"The determination of [w]hether a defendant has knowingly and intelligently waived his rights under *Miranda* depends in part on the competency of the defendant, or, in other words, on his ability to understand and act upon his constitutional rights. . . . To determine whether an individual had the capacity to understand the warnings, the trial court may consider:

the defendant's experience with the police and familiarity with the warnings, his level of education, his intelligence including his IQ, his vocabulary and ability to read and write in the language in which the warnings were given, his age, intoxication, his emotional state and the existence of any mental disease, disorder or retardation." (Citation omitted; internal quotation marks omitted.) Id., 320–21; *State* v. *Toste*, 198 Conn. 573, 580–81, 504 A.2d 1036 (1986).

In this case, the circumstances surrounding the defendant's waiver of his rights indicate that he both understood his rights and waived them. The defendant signed the waiver portion of the notice and waiver of rights form prior to giving his statement after he initially had refused to do so and invoked his right to counsel. By his admission, he had been arrested on several previous occasions and, thus, was familiar with the criminal justice system and the process of waiving his rights.

Moreover, both the defendant and Cahill were present while Bedard prepared the defendant's written statement from the interview. The defendant signed each page of the statement after either reading it himself or having it read to him by Bedard. Bedard testified that he made no threatening statements to the defendant. Further, the defendant did not appear to be under the influence of drugs or alcohol, nor did he, at any time during the interview, express a desire to stop or to end the interview.

We conclude, therefore, on the basis of the foregoing analysis, that the defendant both understood his rights and, subsequently, gave a knowing and intelligent waiver of his rights, and was not thereafter coerced into signing the statement.

## III

In his final claim, the defendant contends that the court abused its discretion by declining to open his

suppression hearing in order to allow him to testify. Specifically, the defendant argues that due to the advice of his attorney, he was under the impression that taking the witness stand would have resulted in a charge of perjury. Consequently, he claims that the court should have opened the suppression hearing in order to give him the opportunity to testify.

The following additional facts are necessary for our resolution of the defendant's claim. The defendant did not testify at the suppression hearing at issue in this appeal. After the court indicated that it intended to deny the defendant's motion to suppress, the defendant addressed the court regarding his decision not to testify. The defendant stated: "I wanted to testify yesterday in my hearing, but I was advised by my attorney [not to]. He . . . advised [me] that if I take the [witness] stand, I'd be charged with perjury. But he didn't . . . inform me that . . . I could only be charge[d] with a perjury . . . if I was found guilty of, like, telling a lie . . . which I wouldn't have told . . . ."

As a threshold issue, we must first address the state's argument that the defendant's claim does not fall within the ambit of General Statutes § 54-94a.[2] Section 54-94a provides in relevant part that "[w]hen a defendant . . . enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress . . . [t]he issue to be

[2] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress . . . ." The state claims that the defendant is not challenging the court's decision to deny his motion to suppress but, rather, the court's decision not to reopen the hearing on the motion.

We agree with the state that the defendant's claim is not reviewable pursuant to § 54-94a, nor does it warrant review under the good cause exception carved out by *State* v. *Revelo*, 256 Conn. 494, 503, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001).[3] In *Revelo*, our Supreme Court discussed the propriety of appellate review for those claims falling outside the scope of § 54-94a. In establishing a good cause exception for such claims, the court held that "in the absence of a showing of good cause, an appellate court should decline to review an issue that has not been raised in accordance with the provisions of § 54-94a. We . . . recognize that *such good cause is likely to be established only infrequently*." (Emphasis added.) Id.

In this case, the defendant is not challenging the court's denial of his motion to suppress, but, rather, the court's decision not to reopen the hearing on this

---

[3] The defendant in *Revelo* entered a plea of nolo contendere to one drug charge. *State* v. *Revelo*, supra, 256 Conn. 497–98. The defendant claimed on appeal that "the trial court's imposition of the nine year sentence violated his right to due process because the court imposed that sentence, instead of the eight year sentence that he originally had been offered, solely because he had chosen to exercise his constitutional and statutory rights to a judicial determination of his motion to suppress." Id., 499.

This court concluded that the defendant's due process claim was not reviewable because General Statutes § 54-94a expressly limits the issues to be considered on appeal to those concerning the correctness of the trial court's denial of a motion to suppress or a motion to dismiss. *State* v. *Revelo*, supra, 256 Conn. 500. Our Supreme Court reversed this court's judgment, concluding that "although the defendant's constitutional claim falls outside the scope of § 54-94a, the defendant has met his heavy burden of establishing that appellate review of his claim nevertheless is warranted." Id., 504.

motion. "[O]ur Supreme Court has declined to consider claims that are not encompassed within [§ 54-94a]." *State* v. *Sebastian*, 41 Conn. App. 530, 534, 677 A.2d 437, cert. denied, 238 Conn. 906, 679 A.2d 365 (1996); see also, e.g., *State* v. *Greene*, 81 Conn. App. 492, 502, 839 A.2d 1284 (2004); *State* v. *Olson*, 67 Conn. App. 562, 564, 787 A.2d 664 (2002); *State* v. *Cedric S.*, 51 Conn. App. 539, 540, 722 A.2d 299 (1999). In this case, the defendant himself frames the issue in his brief exclusively in terms of the court's decision not to open the hearing, arguing that the "trial court abused its discretion by *declining to reopen* the hearing and allowing the defendant to testify." (Emphasis added.) Accord *State* v. *Greene*, supra, 502 (defendant rephrased claim in appellate brief as due process claim). In connection with his claim, the defendant requests only that we remand the case to the trial court with instructions to open the hearing, thus allowing him to testify. Accordingly, we will not review his claim.

The judgment is affirmed.

In this opinion the other judges concurred.