# STATE OF CONNNECTICUT *v.* JOSHUA MILOTTE
## (AC 26217)

Flynn, C. J., and Rogers and Lavine, Js.

Argued March 23—officially released May 23, 2006

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Robin S. Schwartz*, deputy assistant state's attorney, for the appellant (state).

*Martin Zeldis*, public defender, with whom was *Karen A. Goodrow*, public defender, for the appellee (defendant).

*Opinion*

LAVINE, J. The issue in this appeal by the state is whether a police officer who arrested the driver of a motor vehicle on a charge of operating under the influence of intoxicating liquor had a reasonable and articulable suspicion on the basis of facts to justify an investigatory stop. Because the driver was not operating the vehicle in an erratic or dangerous manner or otherwise engaged in or about to engage in criminal activity and because there was no report of recent crime in the area, the officer lacked a particularized and objective factual basis to warrant an investigatory stop. An officer's suspicion grounded in a speculative belief that the operator was engaged in avoidance behavior lacks the specific and objective basis necessary to conclude reasonably that an investigatory detention is justified. We therefore affirm the judgment of the trial court.

The case has the following procedural background. On April 17, 2004, the defendant, Joshua Milotte, was arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a. On August 6, 2004, the defendant filed a motion to suppress evidence of his operating a motor vehicle while under the influence because the investigating officer did not have "probable cause"[1] to stop him. He also filed a motion

---

[1] Although the defendant cited probable cause as the standard in his motion to suppress, reasonable suspicion, not probable cause, is the applicable standard.

to dismiss the charge because there was insufficient evidence to prosecute him. The defendant filed his motions pursuant to Practice Book § 41-8 (5) and § 14-227a, article first, §§ 7, 8 and 9, of the constitution of Connecticut, and the sixth and fourteenth amendments to the United States constitution. On December 30, 2004, following a hearing, the court granted both motions.

The court made the following findings of fact. At approximately 1:50 a.m. on April 17, 2004, the defendant was operating his motor vehicle in a westerly direction on Route 44 in Coventry. Gail McDonnell, a member of the Coventry police department, was patrolling the northern section of Coventry. A police officer for approximately fifteen years, she had attended the municipal police academy twice and had been trained in patrol procedures, investigation and motor vehicle enforcement. She attended a weeklong training program concerning the investigation of operators driving under the influence.

As McDonnell was traveling west on Route 44, she noticed a vehicle ahead of her. When the police cruiser was directly behind the vehicle, the operator turned right onto Twin Hills Drive, a U shaped residential street that returned to Route 44. McDonnell was somewhat suspicious of the operator because he had turned his vehicle right immediately after she drew behind his vehicle. She believed that at that hour of the morning, some drivers avoid having a police officer follow them. McDonnell continued west on Route 44 until she encountered the Bolton town line where she turned her vehicle around. As she was traveling east on Route 44, she again observed the vehicle in the parking lot of a 7-Eleven convenience store. McDonnell became more suspicious that the driver of the vehicle was trying to avoid the police, so she processed the license plate number through police dispatch. She learned that the

address of the owner of the vehicle was in Willimantic. McDonnell concluded that the driver, therefore, had no reason to turn onto Twin Hills Drive other than to avoid her.[2] She decided to follow the vehicle.

When the vehicle left the 7-Eleven parking lot, McDonnell followed, and the operator took the first right turn onto Brewster Street, another residential road. McDonnell's suspicions were heightened because she believed that the operator seemed to be avoiding her. She followed the vehicle until it entered a private driveway at a farmhouse that was completely dark. The operator had turned off the lights of the vehicle. McDonnell continued on and turned her vehicle around. When she passed the farmhouse again, the vehicle was gone. She did not see any taillights on Brewster Street and concluded again that the operator of the vehicle was trying to avoid her. She returned to Route 44 and headed east until she saw the vehicle and activated her overhead lights. The operator drove his vehicle into the Meadowbrook Shopping Plaza, where McDonnell made the investigatory stop. McDonnell noticed the odor of alcohol about the defendant and, after he failed a field sobriety test, arrested him.

According to McDonnell, drivers operating under the influence frequently are arrested in the area. The area, however, was not known as a high crime area, and the defendant had not been traveling at a high rate of speed and did not appear to have committed a motor vehicle violation prior to the stop. McDonnell knew that the vehicle was not the subject of a police investigation that evening, that it had not been stolen and that the owner of the vehicle was not wanted by the authorities. On the basis of McDonnell's training and experience,

[2] The court took judicial notice of the fact that the towns of Mansfield and Windham abut the southeast boundary of the town of Coventry and that the city of Willimantic is part of the town of Windham. Conn. Register and Manual (2003) pp. 603, 681.

and in light of all the circumstances, she believed that the operator of the vehicle was avoiding contact with the police and that such behavior was typical of a person who was involved in some type of criminal activity. For these reasons, McDonnell suspected that the defendant was engaged in, or was about to engage in, illegal conduct.

The court concluded that when McDonnell signaled for the defendant to stop and he drove his vehicle into the Meadowbrook Shopping Plaza, he was seized for purposes of an investigatory detention pursuant to the fourth amendment to the United States constitution and article first, §§ 7, 8 and 9, of the constitution of Connecticut.[3] See *State* v. *Donahue*, 251 Conn. 636, 643, 742 A.2d 775 (1999), cert. denied, 531 U.S. 924, 121 S. Ct. 299, 148 L. Ed. 2d 240 (2000). After citing the relevant precedent governing the federal and state constitutional law; *United States* v. *Cortez*, 449 U.S. 411, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State* v. *Donahue*, supra, 643; *State* v. *Oquendo*, 223 Conn. 635, 613 A.2d 1300 (1992); the court concluded that McDonnell did not have the particularized and objective factual basis necessary to conclude reasonably that an investigatory detention of the defendant was justified. McDonnell merely believed that the defendant was trying to avoid her. The court granted the defendant's motions to suppress the evidence and to dismiss the charge against him. Thereafter, the court granted the state's motion to appeal from the judgment of dismissal.

"Under the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality." (Internal quotation marks omitted.) *State* v. *Paradis*, 91 Conn. App. 595, 607, 881 A.2d 530 (2005).

---

[3] The parties do not dispute that the defendant was seized at the time of the stop.

"On appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . Because a trial court's determination of the validity of a . . . search [or seizure] implicates a defendant's constitutional rights, however, we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . However, [w]e [will] give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) Id., 607–608.

On appeal, the state claims that a particularized and articulable suspicion existed to support McDonnell's stopping the defendant's vehicle and, therefore, the court improperly granted his motion to suppress and dismissed the charge of operating a motor vehicle while under the influence of intoxicating liquor or drugs. We disagree.

The law controlling the issue on appeal, which is whether there was a particularized and articulable suspicion grounded in fact and sufficient to justify an investigative stop, is well known. The application of those legal principles, however, is necessarily fact bound, and that is the focus of our attention on appeal. "In determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . A court

reviewing the legality of a stop must therefore examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom. . . . These standards, which mirror those set forth by the United States Supreme Court in *Terry* v. *Ohio*, [supra, 392 U.S. 20–22], with regard to fourth amendment analysis, govern the legality of investigatory detentions under article first, §§ 7 and 9 of our state constitution." (Internal quotation marks omitted.) *State* v. *Donahue*, supra, 251 Conn. 644.

"Police have the right to stop for investigation short of arrest where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot. . . . [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Internal quotation marks omitted.) Id., 645.

The essential facts of this case are not in dispute. We agree with the court's analysis of, and reasonable inferences drawn from, the facts it found. McDonnell did not observe the defendant operating his vehicle in an unsafe or illegal manner, including speeding. There were no recent reports of crimes in the area, and McDonnell knew that the vehicle and its owner were not wanted by the authorities. The area where the defendant was operating his vehicle was not a high crime area, although it was a place that McDonnell said was known for a number of arrests made for operating a motor vehicle while under the influence of intoxicating liquor or drugs. Other than McDonnell's belief that the defendant wanted to avoid her, she had no particular reason founded in fact to suspect that the defendant was intoxicated or had committed any other motor vehicle or criminal offense. On the basis of the information she received in response to her having done a

check of the vehicle's registration, McDonnell knew before she left the 7-Eleven parking lot that the vehicle was registered and had not been reported stolen, the name of the vehicle's owner and his address in Willimantic.

McDonnell had a suspicious feeling about the defendant after he made an immediate right turn after she approached his vehicle on Route 44. Her suspicions intensified when she observed the defendant's vehicle in the 7-Eleven parking lot, saw it turn onto Brewster Street and proceed into the driveway of a darkened farmhouse. There was no evidence as to what the defendant did while he was at the 7-Eleven parking lot or in the driveway of the darkened farmhouse. The court found that McDonnell stopped the defendant because she believed that he was trying to avoid her, a belief predicated in part on the time of day and the fact that the defendant, who lived in Willimantic, traveled on streets and made stops at locations with which she believed he had no connection. An investigatory stop must be justified by some *objective manifestation* of criminal activity. *United States* v. *Cortez*, supra, 449 U.S. 417. The court concluded that under the circumstances of this case, there was no evidence to suggest that the defendant was engaged in or planning to engage in illegal activity. McDonnell therefore lacked a particularized and articulable reason to detain the defendant.

The facts of this case are similar to the facts of *State* v. *Donahue*, supra, 251 Conn. 647–48, in which the defendant was driving in a deserted, high crime area late at night and made an abrupt turn into an empty parking lot of an establishment that was closed. Although the behavior of the defendant in *Donahue* was consistent with that which often precedes criminal activity, the defendant was not driving erratically and had not violated motor vehicle laws. Furthermore, the vehicle had not been stolen, nor was it the subject of

a police investigation. See also *State* v. *Santos*, 267 Conn. 495, 509, 838 A.2d 981 (2004) ("presence in a high crime area at night, without any other facts, cannot form the basis for a reasonable and articulable suspicion that the defendant had engaged or was about to engage in criminal activity"). The facts of this case are dissimilar from those in *State* v. *Lipscomb*, 258 Conn. 68, 73–74, 779 A.2d 88 (2001), in which the defendant was driving in an area in which prostitutes were known to hail would be customers. It was late at night when the defendant let a woman, suspected by the police of being a prostitute, into his vehicle after she had flagged him down. In *Lipscomb*, there was a particularized and articulable basis that justified the stop, i.e., solicitation of prostitution.

Appellate courts have long said that a particularized and articulable reason to conduct an investigatory stop must be based on more than a hunch. *Terry* v. *Ohio*, supra, 392 U.S. 27. Whatever visceral or intuitive feeling McDonnell had about the way in which the defendant operated his vehicle on April 17, 2004, when all is said and done, it was nothing more than a hunch.[4] McDonnell

---

[4] In its brief, the state argued that avoidance behavior on the part of a suspect, in and of itself, is an objective and reasonable basis to justify an investigatory stop. In support of that argument, the state cited a number of federal cases. We have reviewed the facts of the federal cases cited and conclude that they are factually distinguishable, most notably because the suspicious behavior took place in high crime areas, and the evasive action was consistent with the types of crime committed in that area. For example, in *United States* v. *Arvizu*, 534 U.S. 266, 269–71, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002), the border patrol was alerted by a sensor to a vehicle on a back road at a time when roving patrols were returning to a checkpoint for a shift change. The driver slowed as he approached the patrol, but did not acknowledge the patrol with a wave as was customary on the desolate, unpaved road. The patrol noticed that the knees of two children in the backseat of the vehicle were unusually high, as if the children were sitting on something. The children turned and mechanically waved at the patrol for four or five minutes. The vehicle was similar to the type used in smuggling and was registered to an address in an area notorious for smuggling. The driver turned onto a rough road just before the checkpoint.

We also take this opportunity to note that the state failed to conform its table of authorities to our rules of practice when citing to federal decisions

cited no specific facts to indicate that the defendant was operating his vehicle while under the influence of intoxicating liquor or that he was otherwise engaged in, or about to engage in, criminal behavior. For that reason, the stop was not justified, and the court properly granted the motion to suppress the evidence that was the fruit of the poisonous tree and the motion to dismiss the case.

The judgment is affirmed.

In this opinion the other judges concurred.

that have not been reported officially. See Practice Book § 67-9. We are aware that counsel frequently make use of electronic databases to find decisions that are not published in official reporters. In such instances, citations must conform to Practice Book § 67-11 (c), and if the case is cited in a party's brief, the text of the decision must be included in the appendix to the brief. See Practice Book § 67-9.