******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KYLE PETERSON
(AC 35263)

Bear, Keller and Schaller, Js.*

*Argued May 2—officially released October 7, 2014*

(Appeal from Superior Court, judicial district of New Britain, Alander, J. [motion to suppress]; Strackbein, J. [judgment].)

*Jon L. Schoenhorn*, with whom, on the brief, was *Irene J. Kim*, for the appellant (defendant).

*Timothy S. Sugrue*, assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's attorney, and *Christian M. Watson*, assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Kyle Peterson, appeals from the judgment of conviction, rendered following a conditional plea of nolo contendere, of possession of a controlled substance with intent to sell in violation of General Statutes § 21a-277 (b). On appeal, the defendant claims that the trial court improperly denied his motion to suppress evidence seized from his vehicle by the police. The defendant specifically contends, inter alia, that the police detained him prior to his arrest without a reasonable and articulable suspicion that he was engaged in or about to engage in criminal activity, as required by the fourth amendment of the constitution of the United States and article first, §§ 7 and 9, of the constitution of Connecticut. We agree with the defendant and conclude that the totality of the circumstances in this case did not provide the sufficient reasonable and articulable suspicion that the defendant was engaged in criminal activity to justify the police detaining him. Accordingly, we reverse the judgment of the trial court.

The record and the trial court's findings reveal the following undisputed facts. On March 10, 2010, officers of the New Britain Police Department were conducting surveillance on the residence of Pedro Ayala, a suspected marijuana trafficker. On the same date, the police observed the defendant arrive at Ayala's residence in a Jeep Cherokee, stay for approximately five minutes, and then leave. Once the defendant left Ayala's residence in his vehicle, the police stopped him, searched him, and discovered $4000 in cash on his person. Thereafter, on March 23, 2010, the police executed a search warrant on Ayala's residence and discovered more than two pounds of marijuana, a firearm, and what the police described as "drug proceeds." The police arrested Ayala who, in turn, told the police that the defendant was one of his several sources of marijuana and, on March 10, 2010, he had paid the defendant $4000 in cash for marijuana.

Approximately six months later, on September 29, 2010, the police arrested Eric Cedeno for the sale of marijuana. While in police custody, Cedeno told Officer Joseph Lopa that he regularly purchased marijuana from an individual named Kyle Peterson, whom Cedeno described as an a twenty-five year old male who drove two different Jeep Cherokees. Lopa, on the basis of past investigations involving the defendant, corroborated that Cedeno was describing the defendant.

On the basis of the information received from Ayala and Cedeno that the defendant was selling marijuana in large quantities, the police began conducting surveillance of the defendant's New Britain residence in early October, 2010. In the course of their surveillance, the police observed the defendant make a single trip to 33 Thorniley Street in New Britain, park in the driveway,

enter the residence for approximately five minutes, and then leave. In addition, on October 7, 2010, the police arrested Leonardo Soares, a registered confidential informant for the Federal Drug Enforcement Administration, for the illegal possession of prescription drugs. Soares told the police that he had purchased marijuana from an unidentified male living on the third floor of 33 Thorniley Street. Soares also indicated that he had been inside the third floor apartment in the past, where he had seen several pounds of marijuana and a large quantity of cash. On the basis of this information, as well as information previously obtained from Ayala corroborating that the defendant's March 2010 visit to Ayala's residence involved the sale of marijuana, the police believed that the defendant's October 2010 visit to 33 Thorniley Street, insofar as the defendant quickly entered and exited the residence, was consistent with drug activity.

On October 13, 2010, Lopa contacted Adrian Arocho, a registered confidential informant for the police who had previously provided reliable information, and requested that he make a controlled purchase of marijuana from the defendant. In addition to agreeing to make the controlled purchase, Arocho indicated that he was familiar with the defendant and knew that the defendant sells marijuana. Lopa provided Arocho with a telephone number that he received from Cedeno. With Lopa seated next to him and the speakerphone activated, Arocho called the number from his cell phone. When an individual answered his call, Arocho told the individual that he wanted to purchase marijuana but his usual supplier, Cedeno, did not have any. The individual responded that he had recently "set up" Cedeno and that he would call Arocho back. Lopa, who was familiar with the defendant's voice, confirmed that the individual to whom Arocho was speaking was the defendant. Approximately two minutes after that call ended, the defendant called Arocho back and told him never to call again.

On October 20, 2010, at approximately 1 p.m., Officer Michael Farrell was conducting surveillance of the defendant's residence when he observed the defendant depart the residence in his vehicle with a white, weighted plastic bag in his possession. Farrell contacted Sergeant Jerry Chrostowski via radio to inform him of his observations. Chrostowski, who was conducting patrol in an unmarked police vehicle, followed the defendant to Thorniley Street in New Britain. When Chrostowski turned on to Thorniley Street, he observed the defendant's vehicle enter the driveway of 33 Thorniley Street and come to a stop. At that point, Chrostowski observed the defendant, from his vehicle's driver's seat, begin speaking to an individual unknown to the police through his passenger side window.

On the basis of the information obtained by the police

prior to October 20, 2010, as well as Farrell's observation of the defendant carrying a white, "weighted" plastic bag out of his residence, Chrostowski "believed that [the defendant] was making a [marijuana] delivery to . . . [33 Thorniley Street]." Chrostowski subsequently drove his vehicle into the driveway of 33 Thorniley Street, blocking in the defendant's vehicle from the rear. Chrostowski exited his vehicle, approached the passenger side of the defendant's vehicle, identified himself as a police officer, and instructed the defendant to turn off his engine. Lopa, who arrived at 33 Thorniley Street shortly after Chrostowski exited his vehicle, approached the driver's side of the defendant's vehicle, ordered the defendant to exit the vehicle, and conducted a patdown search of the defendant's person. After Lopa completed his patdown search, he handcuffed the defendant and ordered him to the rear of the vehicle. Chrostowski then searched the defendant's vehicle and found a white Walmart plastic bag containing two ziplock bags with a substance that appeared to be marijuana located on the floor behind the passenger seat of the vehicle. Following a field test, the substance was confirmed to be marijuana and the police placed the defendant under arrest.

The state charged the defendant with two counts of possession of a controlled substance with intent to sell in violation of § 21a-277 (b), one count of possession of a controlled substance within 1500 feet of a school in violation of General Statutes § 21a-278a (b), and one count of possession of a controlled substance in violation of General Statutes § 21a-279 (c). Prior to trial, the defendant moved to suppress evidence seized from his vehicle, claiming, inter alia, that the police did not possess a reasonable and articulable suspicion that he was engaged in or about to engage in criminal activity when Chrostowski entered the driveway of 33 Thorniley Street. Following a suppression hearing, in its memorandum of decision dated August 23, 2012, the trial court denied the defendant's motion to suppress. In its decision, the court stated: "Armed with [the] information [from Ayala, Cedeno, Arocho, and Soares] when the police observed the defendant leave his residence with a 'weighted' white bag and travel in his vehicle to 33 Thorniley Street on October 20, 2010, they had a particularized and objective basis for suspecting the defendant of criminal activity; specifically the delivery of marijuana to 33 Thorniley Street. Accordingly, the police had an appropriate basis to stop the defendant, by blocking his vehicle, after he entered the driveway of 33 Thorniley Street and investigate further."

Following the court's denial of his motion to suppress, the defendant entered a conditional plea of nolo contendere, pursuant to General Statutes § 54-94a,[1] to one count of possession of a controlled substance with intent to sell in violation of § 21a-277 (b). The court accepted the defendant's plea and sentenced him to a

total effective sentence of three years imprisonment followed by three years of probation. This appeal followed.

On appeal, the defendant claims that the court improperly denied his motion to suppress on the grounds that (1) the police did not possess a reasonable and articulable suspicion that he was engaged in or about to engage in criminal activity when Chrostowski pulled into the driveway of 33 Thorniley Street and detained the defendant, in contravention of *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); (2) even if the seizure was appropriate, the police exceeded the bounds of a reasonable *Terry* stop when Lopa ordered him to exit the vehicle and searched his person; and (3) even if the seizure, the removal of the defendant from his vehicle, and subsequent search of his person were appropriate, the scope of his detention was tantamount to a de facto arrest without probable cause in violation of our state and federal constitutions. In addition, the defendant invites this court to "[issue] a plain statement" that our state constitution requires the police to have an "individualized, reasonable, and articulable suspicion" that a motor vehicle occupant is armed or dangerous as a prerequisite to removing an individual from their vehicle and subjecting them to physical seizure.

For the reasons that follow, we agree with the defendant that the court improperly denied his motion to suppress because the police did not possess a reasonable and articulable suspicion that he was engaged in or about to engage in criminal activity when Chrostowski entered the driveway of 33 Thorniley Street and detained the defendant.[2] We decline, however, the defendant's invitation to enunciate, as a matter of state constitutional law, the circumstances under which the police may properly order an individual from his vehicle and subject him to a physical search.[3]

The defendant claims that the court improperly denied his motion to suppress on the basis that the police did not possess a reasonable and articulable suspicion that the defendant was engaged in or about to engage in criminal activity when Chrostowski detained him in the driveway of 33 Thorniley Street. In support of his claim, the defendant directs our attention to the absence of any contemporaneous facts indicating that he was engaged in or about to engage in criminal activity on October 20, 2010. Specifically, the defendant contends that the police did not have a specific and individualized basis to suspect that either (1) the white plastic bag he carried out of his residence contained marijuana or (2) he traveled to 33 Thorniley Street for the purpose of delivering marijuana. We agree with the defendant because the information available to the police on October 20, 2010, when coupled with their observations of the defendant on the same date, did not provide any

specific and individualized basis from which the police reasonably could have concluded that the defendant was engaged in or about to engage in any criminal activity at the time they detained him.

We begin by setting forth the applicable standard of review. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . We undertake a more probing factual review when a constitutional question hangs in the balance."[4] (Citation omitted; internal quotation marks omitted.) *State* v. *Burroughs*, 288 Conn. 836, 843, 955 A.2d 43 (2008).

The law governing investigatory detentions is well settled. "Under the fourth amendment to the United States constitution and article first, [§§ 7 and 9] . . . of our state constitution, a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion, that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest." (Internal quotation marks omitted.) *State* v. *Marti*, 89 Conn. App. 241, 247–48, 872 A.2d 928, cert. denied, 274 Conn. 913, 879 A.2d 893, cert. denied, 547 U.S. 1184, 126 S. Ct. 1364, 164 L. Ed. 2d 73 (2005). "When considering the validity of [an investigatory detention] . . . our threshold inquiry is twofold. . . . First, we must determine at what point, if any . . . the encounter between [the police officers] and the defendant constitute[d] an investigatory [detention]. . . . Next, [i]f we conclude that there was such a [detention], we must then determine whether [the police officers] possessed a reasonable and articulable suspicion [that the individual was engaged in criminal activity] at the time the [investigatory detention] occurred." (Internal quotation marks omitted.) *State* v. *Benton*, 304 Conn. 838, 843, 43 A.3d 619 (2012).

The state concedes, and we agree, that when Chrostowski pulled into the driveway of 33 Thorniley Street, blocked in the defendant's vehicle with his vehicle, and approached the defendant's vehicle with intent to search it, an investigatory detention occurred. See *State* v. *Martin*, 2 Conn. App. 605, 611–12, 482 A.2d 70 (1984) (concluding investigatory detention occurred when police boxed in defendant's vehicle and approached it with intent to search), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985). Accordingly, the only issue is whether the police possessed a reasonable and articula-

ble suspicion that the defendant was engaged in or about to engage in criminal activity when Chrostowski detained him in the driveway of 33 Thorniley Street on October 20, 2010. See *State* v. *Scully*, 195 Conn. 668, 674, 490 A.2d 984 (1985) (investigatory detention must be justified by objective manifestation that individual is or is about to be engaged in criminal activity).

"Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion." (Internal quotation marks omitted.) *State* v. *Marti*, supra, 89 Conn. 248. "In determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity . . . . A court reviewing the legality of a stop must therefore examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom. . . . These standards, which mirror those set forth by the United States Supreme Court in *Terry* v. *Ohio*, [supra, 392 U.S. 20–22] with regard to fourth amendment analysis, govern the legality of investigatory detentions under article first, §§ 7 and 9 of our state constitution. . . .

"Police have the right to stop for investigation short of arrest where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot. . . . [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (Citation omitted; internal quotation marks omitted.) *State* v. *Milotte*, 95 Conn. App. 616, 621–22, 897 A.2d 683 (2006), appeal dismissed, 281 Conn. 612, 917 A.2d 25 (2007).

In the present case, the state contends that the police, on October 20, 2010, had a reasonable and articulable suspicion that the defendant was in possession of marijuana on the basis of the following five factual predicates: (1) on the basis of their March, 2010, observations and interactions with the defendant, as well as the information they obtained from Ayala in March, 2010, the police knew that the defendant utilized "a quick in-and-out" tactic at a dealer's house to exchange marijuana for money; (2) in early October, 2010, the police learned from Soares that an unidentified marijuana dealer may have been operating out of the 33 Thorniley Street residence;[5] (3) also in early October, 2010, the police observed the defendant travel to 33 Thorniley Street, where he made a "quick in-and-out visit" and then departed; (4) during Arocho's attempted controlled pur-

chase in October, 2010, the police learned the defendant had recently resupplied Cedeno with marijuana; (5) on October 20, 2010, the police observed the defendant emerge from his home with a "visibly weighted" plastic bag and subsequently travel to 33 Thorniley Street with the bag in his vehicle.

At the outset, we recognize that the precise issue in this case is whether the information available to police, in conjunction with their observations of the defendant, provided the police with a reasonable suspicion that the defendant was committing an ongoing crime on October 20, 2010. *Navarette* v. *California*,     U.S.    , 134 S. Ct. 1683, 1690 n.2, 188 L. Ed. 2d 680 (2014). After carefully analyzing the quantum of information available to police, as well as their observations of the defendant on October 20, 2010, we conclude that the totality of the circumstances in this case reveal that the police had no particular reason founded in fact to suspect the defendant of ongoing criminal activity at the time they detained him.

In its decision, the trial court, in its own words, found the police to have "reliable information," as a result of their interactions from Ayala, Cedeno, and Arocho, that the defendant was actively engaged in the sale of large quantities of marijuana. In contrast to the "reliable information" obtained from Ayala, Cedeno, and Arocho, the court found the police to have, in its own words, "information" from Soares that he had purchased marijuana from an unidentified male living in the third floor apartment of the 33 Thorniley Street residence and that he had previously witnessed significant quantities of marijuana and cash in that apartment.[6] Moreover, in early October, 2010, the police observed the defendant quickly enter and exit the residence at 33 Thorniley Street—just as he did in March, 2010, when the police observed him quickly visit Ayala's residence for what was later confirmed to be a marijuana sale. From this, the police were not only entitled to lend some degree of credence to the information obtained from Soares, which was neither predictive nor specific, but they reasonably could have inferred that the defendant may have sold marijuana to someone living at 33 Thorniley Street when he visited the residence in early October, 2010. This is so precisely because the police observed the defendant engage in conduct that, while outwardly innocuous, was previously corroborated by the police as conduct consistent with drug activity, namely, his quickly entering and exiting a residence at an address that the police, by virtue of Soares' generalized information, believed was the home of a marijuana dealer.

On October 20, 2010, however, the police did not observe the defendant engage in any drug activity or substantially similar conduct at 33 Thorniley Street. It is well settled, however, that reasonable suspicion can arise from noncriminal or otherwise innocuous con-

duct. *State* v. *Hammond*, 257 Conn. 610, 625, 778 A.2d 108 (2001). "The issue is not whether the particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." (Internal quotation marks omitted.) Id. Here, the police observed the defendant leave his home in the middle of the day with a "weighted" plastic bag in his possession, travel to 33 Thorniley Street in his vehicle, and enter the driveway of that address.[7] Chrostowski then observed the defendant seated in the driver's seat of his vehicle, which was stationary in the driveway, conversing with an unknown individual through the vehicle's passenger side window. Although Chrostowski knew that the defendant had a "weighted" plastic bag in his vehicle, he neither knew to whom the defendant was speaking, heard any of the conversation between the defendant and the unknown individual, witnessed any purported exchange, nor observed the defendant make any attempt to exit his vehicle. Indeed, the defendant's activity on October 20, 2010, was not only inconsistent with the particularized drug activity that led the police to suspect the defendant of delivering marijuana to 33 Thorniley Street on one previous occasion, but inconsistent with drug activity as a general matter. The record does not reveal any particularized basis upon which Chrostowski could have associated the defendant's apparently innocuous conduct in the driveway of 33 Thorniley Street *on that day* with drug activity. Moreover, the record does not reveal any particularized basis upon which the police could have inferred that the defendant employed plastic bags or similar items to transport marijuana. Thus, we fail to perceive what specific and individualized factors, if any, led Chrostowski to conclude that the plastic bag in the defendant's vehicle contained marijuana. Indeed, absent any observations of conduct consistent with drug activity, or specific and individualized information suggesting that the defendant's mere presence at 33 Thorniley Street with a plastic bag in his possession gave rise to a reasonable suspicion that he was there to effectuate a drug transaction, Chrostowski not only did not, but could not have known what, if anything, the defendant was doing there on October 20, 2010, aside from talking to someone.

With respect to the defendant's presence as a factor to be considered, it is well settled that an individual's mere presence at a location known for criminal activity is not in and of itself sufficient to support a reasonable suspicion that the individual is engaged in or about to engage in criminal activity. *Brown* v. *Texas*, 443 U.S. 47, 52, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979). Rather, an individual's presence in such a location is an articulable fact that may be considered in conjunction with more particularized facts in the reasonable suspicion calculus. *State* v. *Moreland*, 23 Conn. App. 495, 497, 582 A.2d 212 (1990). For example, in *State* v. *Turner*, 62 Conn.

App. 376, 771 A.2d 206 (2001), this court concluded that "the defendant's presence in a known drug area, *in combination with* the apparent drug activity that preceded his arrival in the [known drug area] and his own questionable behavior thereafter, was sufficient to support the court's conclusion that the officers had a reasonable and articulable suspicion for an investigatory stop." (Emphasis in original.) Id., 402. In the present case, by contrast, apart from the defendant's mere presence at a location where he was suspected to have previously engaged in a drug transaction weeks prior, the record does not reveal what more particularized factors, if any, the police utilized to link the defendant's presence at that location *on October 20, 2010*, with an objective manifestation of criminal activity. *United States* v. *Cortez*, 449 U.S. 411, 417, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); see also *State* v. *Scully*, supra, 195 Conn. 675. The presence of a known drug dealer with a plastic bag at a location where he is believed to have previously delivered drugs once before, without more, is insufficient to particularize the general suspicion the police harbored with respect to the defendant on October 20, 2010. Indeed, our case law is legion in holding that an individual's presence at a known drug location, when coupled with an objective manifestation of conduct consistent with drug activity and perhaps additional factors, is enough to support a reasonable suspicion. See *State* v. *Arokium*, 143 Conn. App. 419, 430, 71 A.3d 569 (concluding police had reasonable suspicion based on observations of defendant leaving location known for drug activity and engaging in conduct consistent with drug activity), cert. denied, 310 Conn. 904, 75 A.3d 31 (2013); *State* v. *Rodriguez*, 121 Conn. App. 250, 257, 994 A.2d 691 (concluding reasonable suspicion existed where police witnessed exchange at location known for drug activity), cert. denied, 297 Conn. 918, 996 A.2d 278 (2010); *State* v. *Madison*, 116 Conn. App. 327, 336, 976 A.2d 15 (same), cert. denied, 293 Conn. 929, 980 A.2d 916 (2009); *State* v. *Straub*, 90 Conn. App. 147, 151, 877 A.2d 866 (concluding reasonable suspicion existed where conduct consistent with drug activity), cert. denied, 275 Conn. 927, 883 A.2d 1252 (2005); *State* v. *Days*, 89 Conn. App. 789, 800, 875 A.2d 59 (concluding reasonable suspicion existed where police witnessed exchange at location known for drug activity), cert. denied, 275 Conn. 909, 882 A.2d 677 (2005). Such conduct, however, is lacking in the present case.

Instead, it appears that the police harbored a generalized suspicion that the plastic bag in the defendant's vehicle contained marijuana on the basis of their well-founded, albeit past and similarly generalized suspicions that the defendant was a marijuana trafficker and that he had previously delivered marijuana to 33 Thorniley Street. Without information or observations that would have particularized their general suspicion

that the defendant was delivering marijuana to 33 Thorniley Street on October 20, 2010, however, any suspicion of ongoing crime was necessarily founded in conjecture or the police's subjective notions of the defendant's propensity to engage in criminal behavior. "We have consistently stated that a police officer's decision to detain an individual for investigatory purposes must be predicated on more than a mere hunch." (Internal quotation marks omitted.) *State* v. *Oquendo*, 223 Conn. 635, 656, 613 A.2d 1300 (1992). Whatever the basis of Chrostowski's conclusion that the defendant was transporting marijuana to 33 Thorniley Street on October 20, 2010, our review of the record has revealed that it could not have been more than a hunch. For that reason, we conclude that the court's determination that the police possessed a reasonable and articulable suspicion that criminal activity was afoot when they detained the defendant on October 20, 2010, was legally and logically incorrect.[8] The investigatory detention was not justified and, accordingly, any evidence seized following the unlawful detention must be suppressed pursuant to the exclusionary rule. See *State* v. *Milotte*, supra, 95 Conn. App. 620 ("[u]nder the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality" [internal quotation marks omitted]).

The judgment is reversed and the case is remanded with direction to vacate the plea of nolo contendere and grant the defendant's motion to suppress.

In this opinion KELLER, J. concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress . . . the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress . . . would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress . . . . A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[2] Accordingly, we need not review the defendant's remaining claims with respect to the propriety of the court's denial of his motion to suppress.

[3] "General Statutes § 54-94a expressly limits the issues to be considered on appeal to those concerning the correctness of the trial court's denial of a motion to suppress or a motion to dismiss. *State* v. *Jenkins*, 82 Conn. App. 802, 814 n.3, 847 A.2d 1044, cert. denied, 269 Conn. 915, 852 A.2d 745, cert. denied, 543 U.S. 1025, 125 S. Ct. 667, 160 L. Ed. 2d 503 (2004)." (Internal quotation marks omitted.) *State* v. *Clausen*, 102 Conn. App. 241, 242 n.1, 925 A.2d 372 (2007). We fail to perceive how the defendant's request implicates the propriety of the court's denial of his motion to suppress. Moreover, the defendant asserts no good cause for this court to engage in discretionary review of his request. See *State* v. *Revelo*, 256 Conn. 494, 503, 775 A.2d 260 ("in the absence of a showing of good cause, an appellate court should decline to review an issue that has not been raised in accordance with the provisions of § 54-94a [and] . . . such good cause is likely to be established only infrequently"), cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001).

[4] Our Supreme Court recently explained that, "if, upon examination of the testimonial record, [a] reviewing court discovers but one version of the

relevant events upon which both the state and the defendant agree, and such agreement exists both at trial and on appeal, [a] reviewing court may rely on that version of events in evaluating the propriety of the trial court's determinations and determining whether the trial court's factual findings are supported by substantial evidence. In a case where the trial court has concluded that the police action at issue was justified and the undisputed version of events reflected in the transcript was adduced by the state through testimony of the police officers who were involved, a reviewing court's reliance on that version of events is particularly appropriate. If the officers' own testimony as to what occurred is internally consistent and uncontested by the defendant but, in fact, undercuts the trial court's ruling in favor of the state, a reviewing court would be remiss in failing to consider it." *State* v. *DeMarco*, 311 Conn. 510, 520, 88 A.3d 491 (2014).

[5] In its brief to this court, the state contends that "the police learned from Soares . . . [in early October, 2010] that a large scale marijuana dealer was *actively operating* out of the premises at 33 Thorniley Street." (Emphasis added.) The court, however, did not make any finding of fact to that effect with respect to the information the police obtained from Soares. Rather, the court found that Soares "personally purchased" marijuana from an individual living at 33 Thorniley Street and that, "several times in the past," Soares had been inside the residence where he witnessed "several pounds of marijuana and large amounts of cash." Accordingly, we reject the state's characterization of the information that the police obtained from Soares insofar as the state suggests that such information, standing alone, supported an inference that a marijuana dealer was "actively operating" out of the residence at 33 Thorniley Street.

[6] Although common sense dictates that the court did not think Soares' information deserving of the adjective "reliable," we conclude as a matter of law that the court, by omitting the word "reliable," found at least some of Soares' information less reliable than that the police obtained from Ayala, Cedeno, and Arocho. See *Sosin* v. *Sosin*, 300 Conn. 205, 217–18, 14 A.3d 307 (2011) (interpreting trial court judgment matter of law; effect to be given to what is both expressed and clearly implied in judgment).

[7] There was no evidence adduced at the suppression hearing indicating that the defendant had previously delivered marijuana in a plastic bag or that drugs dealers in general use such bags.

[8] The dissent, relying exclusively on this court's decision in *State* v. *Arokium*, supra, 143 Conn. App. 419, concludes that the police possessed a reasonable and articulable suspicion that criminal activity was afoot when they detained the defendant on October 20, 2010. We respectfully disagree with the dissent because *Arokium* is readily distinguishable from the present case.

In *Arokium*, a reliable informant provided a very specific tip to the police that a man named Charlie *was then* selling cocaine from a particular room in a particular hotel. Id., 422. The police corroborated that an individual named Charles Arokium had been renting the particular hotel room for fifteen weeks. Id. In addition to providing the police with a physical description of Charlie, the informant successfully executed a controlled purchase of cocaine from the hotel room. Id. *On the same date of the controlled purchase*, the police began conducting surveillance of the hotel room. Id. *On that date*, the police observed an individual enter the room empty-handed, stay for approximately five minutes, and then leave the room carrying a plastic bag. Id., 423. Shortly thereafter, the police observed another individual enter the room carrying an empty folded bag underneath his arm. This individual emerged from the room fifteen minutes later with the previously empty bag now containing a package. Id. Once this individual left the hotel, the police stopped this individual's vehicle and observed a shoebox containing two bundles of money in plain view in the back seat of the vehicle. Id. The police subsequently began the process of applying for a warrant to search the hotel room. Id., 423–24. With the issuance of the search warrant pending, the police observed another individual leave the hotel room carrying a plastic bag. Id., 424. The police had not seen this individual enter the hotel room. Id. Upon closer observation by an officer on foot, the police confirmed that this individual matched the informant's description of Charlie. Id. Shortly after the police identified Charlie, he entered a taxicab. Id. Believing that Charlie was the individual who had been selling cocaine out of the hotel room, the police stopped the taxicab and asked him to exit. Id., 427. On the basis of the foregoing, this court concluded that the police possessed a reasonable and articulable suspicion that Charlie was engaged in ongoing criminal activity at the time the police stopped him in the taxicab. Id.

In the present case, by contrast, the police did not possess any reliable information that an individual living at 33 Thorniley Street was actively

selling marijuana on October 20, 2010. Rather, they harbored a generalized suspicion, based on past observations and information, that the defendant was actively selling marijuana and that a marijuana sale involving the defendant had taken place at 33 Thorniley Street on one occasion in the past. Notwithstanding this generalized suspicion, the police did not execute a controlled purchase from the defendant or any individual at 33 Thorniley Street on October 20, 2010. Moreover, the police did not observe any conduct consistent with drug activity at either 33 Thorniley Street or the defendant's residence on that date. No search warrant was pending for either 33 Thorniley Street or the defendant's residence as of that date. This case is distinguishable from *Arokium* by virtue of the absence of any explanation founded in specific and individualized facts as to why the police believed that the defendant was carrying marijuana in a white plastic shopping bag, notwithstanding the fact that they had never observed him carry a shopping bag before. The only explanation provided by the state is that the plastic bag must have contained marijuana because the defendant, a known marijuana dealer, had traveled with it to a location where the police suspected him of delivering marijuana on one prior occasion, notwithstanding that their prior suspicion was wholly grounded in the fact that he quickly entered and exited the residence on the prior occasion. Because the police observed no such conduct on October 20, 2010, the police had no reason based in fact to suspect that the plastic shopping bag contained marijuana.